**Elmer Ransome HUGHES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19491.**

United States Court of Appeals
Fifth Circuit.

June 20, 1962.

Elmer Ransome Hughes, Atlanta, Ga., for appellant.

H. M. Ray, U.S. Atty., J. L. Prichard, Asst. U. S. Atty., Oxford, Miss., for appellee.

Before TUTTLE, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

On August 11, 1959 a four-count indictment was returned against Elmer Ransome Hughes charging him with four separate sales of morphine sulfate on the 1st, 2nd, 14th and 26th days of May 1959, respectively, in violation of Section 4705(a), Title 26, United States Code. The arraignment was set for October 23, 1959, at 10:00 o'clock A.M. Hughes appeared without counsel and explained to the court that he could not afford to employ counsel, but had talked to a lawyer. It appeared that the lawyer was convalescing from an operation and unable to be in court. The following then occurred:

"THE COURT: Under the circumstances, I will not assign him. Mr. Phil Stone—(interrupted).

"MR. STONE: Your Honor, Please don't. I have to get another case—(Interrupted).

"THE COURT: I am now assigning you to represent this defendant Elmer Ransome Hughes. You may confer with him during the call of the rest of the criminal docket, advising him with reference to the nature of the charges against him, and assist in the arraignment at a later time today."

An hour later the court inquired from Mr. Stone whether he was ready to proceed with the arraignment and Mr. Stone replied in the affirmative.

"MR. STONE: I want to say to the Court also, he is an addict; and the Court knows the proper thing to do in that situation. He has been for fifteen years, haven't you?

"THE DEFENDANT: Yes, sir.

"MR. STONE: I understand you are pleading guilty.

"THE DEFENDANT: Yes, sir."

Each count of the indictment was then read to the defendant, and to each count separately he pleaded guilty. Count 3 charges a sale on May 14, 1959 of 72 tablets of morphine sulfate, ¼ grain each. After Count 3 was read to the defendant, the following colloquy ensued:

"MR. GRISHAM (Assistant United States Attorney): How do you plead to count three?

"THE DEFENDANT: I didn't sell it.

"MR. GRISHAM: What is your plea on count three?

"THE DEFENDANT: He wanted thirty-six, but didn't take seventy-three (sic). That was out of my hous. (sic)

"MR. GRISHAM: You did sell thirty-six on that date?

"THE DEFENDANT: Yes, sir.

"MR. GRISHAM: You sold thirty-six, anyway.

"THE COURT: How do you plead to this count three?

"THE DEFENDANT: I am guilty of thirty-six, but didn't sell him seventy-three (sic).

"MR. STONE: You are guilty of thirty-six?

"THE DEFENDANT: Yes, sir, —thirty-six.

"THE COURT: How do you plead to the count?

"THE DEFENDANT: I am guilty.

"THE COURT: All right."

To each of the other three counts the defendant pleaded guilty without qualification. The court inquired from the defendant:

"THE COURT: Do you understand the effect of your pleas of guilty?

"THE DEFENDANT: Yes, sir.

"THE COURT: You have been advised by assigned counsel, Mr. Stone, about what the effect of this plea would be?

"THE DEFENDANT: Yes, sir.

"THE COURT: You are entering these pleas voluntarily, of your own accord?

"THE DEFENDANT: Yes, sir.

"THE COURT: No one is forcing you to enter these pleas?

"THE DEFENDANT: No sir."

The court then remanded the defendant to the custody of the Marshal "to be brought back before this court Saturday morning, the 21st day of November at nine o'clock A.M. for sentence." The 21st of November was then 29 days in the future. The following colloquy ensued:

"MR. STONE: Your Honor, may I say one thing? I suppose it can't be done,—if he has to go, he would like to go as soon as possible. Is that right, Mr. Hughes?

"THE DEFENDANT: Yes, sir.

"THE COURT: If, when I get further into the matter, it is possible to arrange earlier sentence day, Mr. Stone, I will be glad to do so. Otherwise, it stands as it is,—the 21st day of November at nine o'clock in the morning."

The Court Reporter's transcript of the proceedings on November 21, 1959, shows under "Appearances": "For the Defendant * * * Mr. Phil Stone (Assigned), Attorney at Law, Oxford, Mississippi." The defendant was called, faced the court and asked:

"THE COURT: Elmer Ransome Hughes, do you have anything to say in your own behalf or in mitigation of punishment before the court passes sentence on you?

"THE DEFENDANT: No, sir."

The court then imposed sentence as later set forth in the judgment and commitment:

"IT IS ADJUDGED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of

"Count 1: Five (5) years in some institution to be designated by the Attorney General.

"Count 2: Five (5) years in some institution to be designated by the Attorney General; the sentence imposed in Count 2 to run consecutively with the sentence imposed in Count 1 and to take effect at the expiration of sentence imposed in Count 1.

"Count 3: Five (5) years in some institution to be designated by the Attorney General, the sentence to run concurrently with the sentences heretofore imposed in Counts 1 and 2.

"Count 4: Five (5) years in some institution to be designated by the Attorney General, the sentence to run concurrently with the sentences heretofore imposed in Counts 1 and 2."

The court explained to the defendant: "The sentence imposed for Count two is to run consecutively with the sentence imposed on Count One, and take effect only at the end of the sentence imposed on Count One."

The formal "Judgment and Commitment" recites that:

"On this 21 day of November, 1959 came the attorney for the government and the defendant appeared in person and by counsel."

Some two years later, on December 6, 1961, the defendant filed a motion attacking the sentence under 28 U.S.C.A. § 2255 upon the following grounds:

"(1) Court appointed counsel, Phil Stone, Esquire, failed to stand with petitioner before the bar, at the time of imposition of sentence.

"(2) The plea of guilty was not competently entered by the petitioner.

"(3) The sentence, with respect to clarity, is ambiguous and does not define with certainty the intent of the Court as to how the sentences imposed are to be served."

In his motion, Hughes further alleged:

"Be it remembered, that petitioner had been addicted to the use of narcotics for a long period of years, and his main concern, the all compelling concern, 'was to go as soon as possible' and get treatment for his affliction. It is well established that narcotic addicts are generally supposed to be impelled beyond normal instinct, and so, the petitioner was ill advised as to the entry of his plea of guilty."

The movant relied particularly on Gannon v. United States, 6 Cir., 1953, 208 F.2d 772. In that case the defendant was permitted to plead guilty without appointment of counsel when he responded as follows to the court's inquiry as to whether he desired an attorney:

"'No your Honor. I am very sick and I need hospitalization, and that is why I am trying to hurry this thing along.'" 208 F.2d at 773.

The Court of Appeals for the Sixth Circuit said:

"We are of the opinion that the record sustains appellant's contention that the waiver of his right to counsel and the entry of his plea of

guilty to the first Information was done without knowledge of the Boggs Act and its applicable provisions; that as an addict he expected to be confined at the Narcotic Farm at Lexington, Kentucky, where he had been before; that the existence and provisions of the Boggs Act were not explained to him prior to the entry of his plea; and that he did not have the assistance of counsel guaranteed to him by the Sixth Amendment to the Constitution of the United States. Under such circumstances, appellant did not competently, intelligently, and with full understanding of the implications, waive his constitutional right to counsel." 208 F.2d at 774.

In the present case, the defendant was represented by court-appointed counsel. The defendant affirmatively stated to the court that he understood the effect of his pleas of guilty, and had been advised by his assigned counsel about what the effect of such pleas would be. In his motion filed two years later, Hughes claimed just the opposite.

As to the second ground of Hughes' motion, it clearly appears that Hughes entered his pleas of guilty to each count understandingly and voluntarily. He carefully qualified his plea as to Count 3, and explained that he sold only 36 tablets instead of 72 as charged.

■ As to the third ground of Hughes' motion, we agree with the Eighth Circuit that where the oral pronouncement clearly made sentences consecutive, the language in the signed judgment, "to run consecutively with etc.," cannot "reasonably be regarded as having any other natural and contextual meaning in the situation that 'consecutive to'." Young v. United States, 8 Cir., 1960, 274 F.2d 698, 702, aff'd by an equally divided court, 366 U.S. 761, 81

S.Ct. 1670, 6 L.Ed.2d 853, rehearing denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed. 2d 72.

■ Reverting now to the first ground of Hughes' motion, both the court reporter's transcript and the judgment entry indicate that Hughes' assigned counsel was present at the time of sentence. Hughes' motion did not claim otherwise, but simply contended that the attorney "failed to stand with petitioner before the Bar at the time of imposition of sentence." On the other hand, the reply brief filed by Hughes *pro se* averred that "* * * when appellant appeared for sentence, *Mr. Stone was not present and petitioner was left without the guiding hand of competent counsel at the crucial stage of imposition of sentence.*" Of course, sentencing occurred in open court, and the trial judge knows whether this averment is true. In the present state of the record, we must assume that Hughes' attorney was present at the time of sentencing, but did not stand at the bar with him.

The district court carefully observed the requirement of Rule 32(a), Federal Rules of Criminal Procedure, 18 U.S. C.A., to "afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." Compare Hill v. United States, 1962, 368 U.S. 424, 425–429, 82 S.Ct. 468, 7 L.Ed.2d 417; Machibroda v. United States, 1962, 368 U.S. 487, 489, 82 S.Ct. 510, 7 L.Ed.2d 473. By analogy to those two decisions, it seems clear to us that the mere failure of counsel to stand at the bar with the defendant at the time of sentence is not such basic error as would authorize collateral relief.

The judgment denying the Section 2255 motion is

Affirmed.