**UNITED STATES ex rel. Charles FOX**

v.

**Grant PRICE, Warden Allegheny County Jail, Pittsburgh, Pennsylvania.**

**Civ. A. No. 65–1337.**

United States District Court
W. D. Pennsylvania.

Aug. 11, 1966.

---

## OPINION

ROSENBERG, District Judge.

Charles Fox asserted in a letter sent to me, and which is made a part of the record, that he is unable to put his complaint in proper writing, and that it is a meritorious one.

He is presently confined in the Allegheny County Jail for either or both a parole violation and commission of a crime subsequent to that for which he was originally incarcerated. Although the petitioner has already on several occasions presented petitions for writs of habeas corpus to this District Court and these have been denied, and although I, myself, heretofore denied his petition on the same complaint as presently made, I, nevertheless, felt it incumbent upon me to give the petitioner an opportunity to present his matter orally in order that I might satisfactorily understand and determine any proper questions which he should happen to raise. However, I do not by this granting of a hearing on a letter-complaint, such as this, intend that it be considered as any precedent whatsoever.

Accordingly, I fixed a hearing before me for March 18th, 1966 and allowed him to present his case as fully and completely as he desired. During the hearing of his case, the petitioner had copies of the records, made during his sentencing on the convictions here involved.

His complaint in substance is that reference to a particular number and term of an indictment in the Courts of Allegheny County, Pennsylvania, on which he received a sentence was erroneous and that great prejudice resulted when someone struck out the word "concurrently" and added the word "consecutively". Based upon the presentation thus made, I indicated at the close of the hearing that I would grant a rule upon the Commonwealth of Pennsylvania to show cause and have counsel appointed.

Prior to taking such action, I, nevertheless, first examined the record, after which communication was had with the Assistant District Attorney in charge of the records, and I received in turn telephonic communication from sentencing Judge Leo H. McKay of the Court of Common Pleas of Mercer County, sitting specially in Allegheny County.

At my request Judge McKay sent me a letter setting forth the circumstances as they actually occurred. This letter is dated March 28th, 1966, and is made a part of this record. I now accept the written statement of Judge McKay as evidence of the factual circumstances as they relate to the complaint as here made. 28 U.S. C.A. § 2245;[1] United States ex rel. Hawryliak v. Maroney, 235 F.Supp. 135 (D.C.Pa., 1964).

The facts are these. Fox had been apprehended and indicted on a series of

---

[1]. § 2245. Certificate of trial judge admissible in evidence.

On the hearing of an application for a writ of habeas corpus to inquire into the legality of the detention of a person pursuant to a judgment the certificate of the judge who presided at the trial resulting in the judgment, setting forth the facts occurring at the trial, shall be admissible in evidence. Copies of the certificate shall be filed with the court in which the application is pending and in the court in which the trial took place. June 25, 1948, c. 646, 62 Stat. 966.

cases relating to stealing of automobiles by a gang. They were all represented by counsel. All submitted to a trial without a jury before Judge McKay. Fox was a defendant or one of the co-defendants in more than thirty of these indictments, and pleaded guilty to numerous of the indictments for larceny and burglary. Among these were No. 276 May Sessions 1959 for larceny and No. 115 October Sessions 1959 for burglary. He also was found guilty on a number of indictments by Judge McKay.

It was expressed openly in court at the time of sentencing [2] by the sentencing judge that Fox receive a sentence of from two to five years on two of the counts to which he pleaded guilty, which sentences were to run consecutively, and that he receive identical sentences for each of the convictions which Judge McKay had tried and found him guilty. These last, however, it was stated, were to run concurrently with the two sentences which were to run consecutively. On certain other of the misdemeanors for which Fox had pleaded or been found guilty, Judge McKay suspended sentences.

According to Judge McKay's notes, at the trial, in referring to the number of one of the larceny cases, to which Fox had pleaded guilty, Judge McKay inadvertently said No. "279" May Sessions 1959, when in fact, there was no such case at that number against Fox. Judge McKay had apparently not heard the true number when it was read. By mistake, then, he made that case, erroneously referred to at No. "279", the key one orally at the time of sentencing from two to five years. The second sentence of from two to five years at No. 115 October Sessions 1959 was the correct reference and that case was "to begin to run at the termination of the sentence at No. 279 May Sessions 1959."

Judge McKay is of the opinion that the sentences were stamped by the clerk and signed by Judge McKay late that afternoon without discovering the erroneous No. "279". They were, however not filed at that time because it was after closing time of the office of the Clerk of Court. On the next morning the clerk, who has since become deceased, called the matter to the Judge's attention and he undertook to correct the error. In the Judge's own words, he did it in this way:

"I made No. 276 May Sessions the key sentence; instructed the clerk to draw a line through the words 'to run concurrently with the sentence at No. 115 October session', which he had written on No. 276, told him to change No. '279' in the sentence at No. 115 October and correct it to read No. 276, so that the sentence at No. 115 October Sessions then read, 'to begin to run at the termination of the sentence at No. 276 May Sessions, 1959', and told him then to file all of the papers as so corrected. The whole intent of the written senence, and the record as corrected by my order and in my presence by the clerk before filing, thus, was to sentence him to 2 to 5 at No. 276 May, 1959, and 2 to 5 at No. 115 October, 1959, the latter to begin at the termination of the former and a total of 5 [sic] to 10 for the both. All of this

**2.** Page 518 of transcript (Quote of Judge McKay's words):

"The sentence of the Court is, at No. 279 May Sessions, 1959, where you pleaded guilty to larceny of the case, that you undergo an imprisoment at separate and solitary confinement at such place that you shall be committed by the Diagnostic and Classification Center, for a term of not less than two years nor more than five years.

And at No. 115 October Term, 1959, where you pleaded guilty to the charge of burglary, that you undergo a similar sentence to begin at the termination of the sentence imposed at No. 279 May Term, 1959.

It is further ordered that a sentence identical with the second sentence, to run concurrent with it, be imposed at 276 May Term, 272 May Term, 368 May Term, 41 October Term, 21 October Term, 122 October Term, 423 October Term, 106 October,—423 is off, that was one he was found not guilty of—101 October Term, 105 October Term—all of the misdemeanors, of which there are innumerable ones, the receiving stolen goods, passing forged titles and the like, sentence is suspended."

was done in chambers the following morning, in the absence of the defendant, of course, but in complete understanding by him at the time of sentence in open court that he was getting just exactly what he got—2 to 5 on one, 2 to 5 on another, to be served consecutively, a total of 5 to 10 [sic]."

■ Two questions are now before me. The first one is: Did any inadvertency relating to either the number "279" or the words "consecutively" or "concurrently" as used orally at the time of sentencing, and as set forth by the correction on the back of the indictment, have any prejudicial effect upon the petitioner so as to deprive him of any constitutional rights?

In Rowley v. Welch, 72 App.D.C. 351, 114 F.2d 499 (1940), the trial judge, at the time of sentencing, inadvertently stated that sentences were to run concurrently when his intent was to make them run consecutively. It was held that the judge's statement that they were to run concurrently was a slip of the tongue and not his intention and that there was no merit in the complaint that the trial judge did not have the power after trial to correct the slip of the tongue. The change did not constitute "cruel and inhuman punishment" so as to preclude enforcement of the corrected sentence. The court stated (at page 500):

" * * * we are not required to decide whether a court having once pronounced sentence in accordance with its true intent and purpose can change it later in such a manner as to increase the penalty, whether before or after service of the sentence begins. The question is whether such a change can be made, if done promptly, in order to correct a sentence inadvertently pronounced and make it speak the true intention of the court. * * * [page 503] It was not the purpose of the [Fifth] amendment to compel courts

to give effect to their inattentive and nondeliberative acts, so long at least as their actual execution has not been initiated and the prisoner has not been harmed by them other than in hearing the pronouncement made and promptly corrected."

In Armstrong v. United States, 210 F. 2d 951, C.A.6, 1954, the record was relied upon in a habeas corpus proceeding to establish that the defendant had been given a sentence of five years on each of four counts, but that the sentences on the last three counts were to run concurrently and were suspended, and that therefore the defendant was not entitled to release on the ground that the sentences had been suspended on all four counts. A reading of the sentencing judge's entire statement revealed an intent to suspend sentence on only three counts, qualifying what appeared in the first sentence of his pronouncement to be a suspension of sentence on all counts.

■ The second question before me is whether or not the petitioner Fox should have been present when Judge McKay corrected the after-discovered error of the misnamed No. "279" for what should have been No. 276. There is no authority in law which requires that a defendant must be present when a judge signs the order of sentence. While Federal law requires that a modification of a sentence must be done in the presence of the defendant,[3] United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963); United States v. Morse, 344 F. 2d 27 (C.A.4, 1965); Powers v. United States, 325 F.2d 666 (C.A.1, 1963); United States v. Neal, 320 F.2d 533 (C.A. 3, 1963); Wilson v. Bell, 137 F.2d 716 (C.A.6, 1943), this is only as it relates to the oral communication to the defendant. The controlling consideration is whether or not the defendant was aware and had notice of the sentence which the court intended to impose. Young v. United States, 274 F.2d 698 (C.A.8, 1960)

3. Federal Rule of Criminal Procedure 43 provides: "The defendant shall be present * * * at the imposition of sentence, except as otherwise provided by these rules * * *. The defendant's presence is not required at a reduction of sentence under Rule 35."

aff'd 366 U.S. 761, 81 S.Ct. 1670, 6 L.Ed. 2d 853 (1961). Also Hughes v. United States, 304 F.2d 91, (C.A.5, 1962) cert. den. 371 U.S. 894, 83 S.Ct. 195, 9 L.Ed.2d 127.

The clerk ordinarily makes up or writes up the form of sentence imposed. The actual wording may or may not vary in some respects from the pronounced word. The significance lies only in the communication given to the defendant so that he may know his penalty and be aware of its substance and impact. It is not required that the order of court be written out and that this be read to him word for word at the time of its imposition in order to be effective. It is the oral communication of imposition of sentence which has its impact upon the defendant and which is required to be given to him as he can and does intelligently understand it.

Federal Rule of Criminal Procedure 36 provides for the correction of clerical error: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

■ While the best practice in making any changes under this rule includes the presence of the defendant, the absence of the defendant does not affect the propriety and validity of the change when he is fully aware of court's intention and no other substantial rights of the prisoner are affected. Kennedy v. Reid, 101 U.S. App.D.C. 400, 249 F.2d 492 (1957); Henley v. D. M. Heritage, 337 F.2d 847 (C.A.5, 1964).

I do not indicate that because this is the practice in a Federal Court that it is also the correct practice in a State Court, although in Flowers v. State of Oklahoma, 356 F.2d 916 (C.A.10, 1966), similar state procedure and practice were upheld as raising no constitutional issue.

■ The record of this case convinces me that the defendant was made fully, completely and understandably aware of the sentence which was imposed upon

him and of its extent, and that he understood in spite of the fact that by inadvertence No. 279 had been used instead of No. 276. The defendant at the time did not call it to the attention of the Court and his counsel said nothing about it. It was obviously well understood and the full significance of the sentences was received by both the defendant and his counsel.

This was made quite clear before me in the instant case when the petitioner submitted a copy of his transcript and read portions thereof at the hearing. His entire claim here is based upon the use of the figure "279" as against "276" and the lining out of the word "concurrently" and inserting the word "consecutively". During this time he did not protest that the figure "279" was incorrectly used, impliedly because he was fully cognizant of the import and intent of the Judge's pronouncement. The instant case is similar to the case of Lott v. United States, 309 F.2d 115, 126 (C.A.5, 1962), cert. den. 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963), where certain misuse of language in referring to the nature of the defendant's crimes was held, if error at all, nothing more than a clerical error subject to correction by the court at any time. And in Strickland v. United States, 295 F.2d 186 (C.A.8, 1961), the court in refusing to grant a motion to correct an allegedly ambiguous oral sentence stated: "There is no showing that the defendant or anyone else was confused or misled in any way by the sentence imposed." Neither was there any showing here by the petitioner that he or his counsel were confused, misled or prejudiced in any way by the sentence as imposed.

Furthermore, the petitioner was asked by me in open court on a number of occasions whether he had presently any resort open to him in the State courts. His answer was a positive denial. From my contact with the District Attorney in order to receive the records, I was informed, and it was verified by Judge McKay's letter, that the petitioner is now in the Court of Common Pleas on another phase in an attack upon his in-

carceration. There is also indication that he may be before Judge Montgomery in the Pennsylvania Superior Court.

 It now appears that the petitioner is playing some sort of a game in both the State and Federal courts, rather than that he has any meritorious claim requiring serious consideration by the various judges to whom he has and is now appealing. It is undoubtedly the serious desire of judges to come across a deserving claim and to give earnest time and effort in order to do justice; but judges are busy and have many arduous and deserving matters which require their time and attention. While "[s]entences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehension by those who must execute them" (United States v. Daugherty, 269 U.S. 360, 46 S. Ct. 156, 157, 70 L.Ed. 309, 1926), sentencing should not be a game in which a wrong move by the judge means immunity for the prisoner (McDowell v. Swope, 183 F.2d 856, C.A.9, 1950).

Claims that a petitioner is entitled to a writ of habeas corpus must be based on merit. While this petitioner is not precluded from bringing successive petitions, he would, nevertheless, be more persuasive as to the merit of his claim if he were to include all of them and present them in earnest fashion, rather than as he is presenting them variably but simultaneously in both the State and Federal courts. LaClair v. United States, 241 F.Supp. 819 (D.C.Ind., 1965). Thus no substantial factual issue exists which would require a further hearing and the taking of any testimony. Walker v. Taylor, 338 F.2d 945 (C.A.10, 1964); United States ex rel. Barnosky v. Maroney, 240 F.Supp. 736 (W.D.Pa., 1965); 28 U.S.C. § 2254.

While a judge cannot be averse to considering all relevant matters of a petitioner, there are limitations beyond which he cannot go. The petitioner here, and others interested with him, have been constantly sending letters importuning his release because he has learned his lesson and because a woman and children are waiting for him to make a home for them. Although I am sympathetic to all of these, it does not necessarily follow that I can issue a habeas corpus on such a consideration, when it has no relevancy to the technical attack which the petitioner has made on the procedure by which he became incarcerated. As relates to obtaining freedom or parole for the reasons set out in the letters, the remedy lies with the State tribunals and not in the District Court on habeas corpus proceedings. This explanation is made here only because there is some possible misunderstanding by the petitioner on any rights which he may have to come in for a remedy by way of habeas corpus.

After hearing had and inquiry made and for the various reasons expressed here, I am not persuaded that the petitioner is entitled to a writ of habeas corpus in a Federal court, and his petition will be denied.