## Noyer v. Commonwealth

*Richard A. Consiglio,* for petitioner.
*Oliver E. Mattas, Jr., District Attorney,* for Commonwealth.

BRUMBAUGH, *J.,* October 26, 1981—Before us is the petition for a writ of habeas corpus of Ronald J. Noyer, an inmate of the State Correctional Institution at Huntingdon who is there serving 20 to 40 years under two consecutive armed robbery sentences imposed by this court as a result of jury trial convictions to Criminal Action nos. 1259 and 1260 of 1974. This petition was filed with the Prothonotary and Clerk of Courts of Blair County on Sep-

tember 28, 1981, and on the same day a copy thereof was served upon this judge.

Disposition of the subject petition is here given priority consideration[1] solely for the purpose of making abundantly clear to petitioner and others of like situation and attitude the views of this particular judge with regard to the manner of exercise of post conviction rights and matters relevant thereto.

We believe it to be within the inherent power of any court to initiate, sua sponte, whatever action may be necessary to protect, uphold and preserve the dignity and respect to which the judicial system certainly is entitled. No judge should sanction the employment of vituperative or scurrilous language in a pleading or similar document which is disparaging to the court. Impudence merits but short shrift, and documents containing such language are ordinarily entitled to nonconsideration and summary dismissal.[2] The insolent imperative set

1. On September 29, 1981, this judge was admitted to The Altoona Hospital, in accordance with calendar scheduling plans set weeks in advance in conjunction with the other two judges of Blair County and said County's court administrator. Having undergone surgery on September 30, 1981 this judge was discharged from said Hospital on October 3, 1981 and, following a brief recuperative period at home, returned to work on October 13 and immediately resumed the undertaking of all variety of cases, both civil and criminal, awaiting his hearing, trial or other determination. It was the aforesaid recuperative period which afforded opportunity for prompt disposal of this matter.

2. We decline summarily to dismiss the petition on this ground alone since such dismissal must be without prejudice; under those circumstances, if the matter were again before us upon amendment or reinstatement we would still have the other matters addressed hereinafter yet to dispose of, a circumstance not conducive to judicial economy but rather encouraging of multitudinous litigation.

forth at the bottom of page 15 of the petition, in the concluding sentence and paragraph of petitioner's "*ARGUMENT*,"[3] is undoubtedly fostered by petitioner's belief that he is safely beyond the bounds of disciplinary action owing to the ineffectiveness of any admonition, reprimand or censure, and the practical inapplicability of the common forms of punishment for contempt through the imposition of fine and/or incarceration.[4] Lower court judges nonetheless possess sufficient discretion and latitude to deal with the insults and contumely of a defendant or petitioner according to the circumstances of each case and in a manner best suited to restore and maintain the decorum and dignity of all court proceedings. See Com. v. Snyder, 443 Pa. 433, 275 A. 2d 312 (1971).

The record clearly manifesting that petitioner is in contempt of this court, which we specifically so find, he shall proceed to purge himself thereof by undertaking the following acts of rectification:

(a) he shall forward to this judge a letter of apology and retraction of the offensive remark, and shall also forward an executed copy of such letter to the Blair County Clerk of Courts for filing with this action; and

(b) he shall file an amended pro se petition[5] in

---

3. Reference is to the remark that the court should "*get off it's butt*" (emphasis petitioner's).

.4. Petitioner is under sentences of additional periods of lengthy confinement totalling a maximum of 15 to 47 years, to be served consecutively to his confinement on the charges to Criminal Action nos. 1259 and 1260 of 1974. See Criminal Action nos. 700 through 705 of 1975.

5. While our subsequent disposition of this petition denies petitioner the right to act as his own counsel, with respect to filing the amended petition he must act personally inasmuch as it is not our intention to burden his counsel for petitioner's own indiscretion.

this matter in which he shall omit and delete the aforesaid offensive remark contained in the concluding sentence and paragraph of petitioner's *"ARGUMENT"* as currently set forth at the bottom of page 15 of the original petition. Until both above steps of purgation have been fully accomplished this judge shall not undertake disposition of petitioner's PCHA proceeding. See Com. v. Palmer, 246 Pa. Superior Ct. 344, 371 A. 2d 525 (1977).

There can be no question that Attorney Richard A. Consiglio, as court-appointed counsel by order of this court, has singularly, continuously and most adequately represented Mr. Noyer at all five[6] of his PCHA hearings over the past several years to Criminal Action nos. 1259 and 1260 of 1974. Attorney Consiglio's function as petitioner's PCHA counsel is broad enough to constitute him petitioner's attorney in the within matter also, for section 2 of the Post Conviction Hearing Act of January 26, 1966, P.L. (1965) 1580, 19 P.S. § 1180-2, provides in pertinent part as follows:

"This act establishes a post-conviction procedure for providing relief from convictions obtained and sentences imposed without due process of law. The procedure hereby established shall encompass all common law and statutory procedures for the same purpose that exist when this statute takes effect, including habeas corpus. . . ."

Since Mr. Noyer's habeas corpus petition currently before us is directly and inextricably connected to the aforesaid PCHA hearings and both have the same ultimate objective—namely, discharge of petitioner from custody—the identity of

---

6. Respectively held on March 22, 1979; March 13, 1980; May 21, 1980; July 17, 1980 and December 30, 1980.

purpose of both proceedings and their substantive relationship renders each within the scope of attorney Consiglio's appointment and his representation of Mr. Noyer. So far as this judge is aware petitioner has mounted no attack upon said counsel's conscientiousness, capabilities, efficiency or effectiveness. Moreover, it is significant to note the implicit accord of Mr. Noyer with the above, for on the cover of his habeas corpus petition Mr. Noyer has expressly designated "RICHARD A. CONSIGLIO, Esq., Attorney for petitioner" and has opened the addresses of the petition as though made by petitioner and also "through his attorney Richard A. Consiglio,Esq."

Despite the aforesaid references in the petition to his attorney, it is perfectly obvious that the preparation, typing and filing of the petition was accomplished by Mr. Noyer solely and exclusively of his own initiative, as the work of petitioner himself, or at least with absolutely no indication of editing, input or approval by or on behalf of attorney Consiglio. Neither filing nor service were effected through the offices of said attorney, but rather by direct mailing from Huntingdon by petitioner acting in his own behalf. Nowhere does attorney Consiglio's signature or affidavit appear in the petition. The motion for issuance of a rule to show cause is made solely by Mr. Noyer, pro se. Manifestly, therefore, Attorney Consiglio was neither a moving force behind nor a participant in this present petition process.

The purpose of appointed or retained counsel is not to create octopus status for one so represented, or to authorize a "scattershot" approach to the filing and presentation of a limitless variety of petitions and motions, as may from time to time strike one's fancy. The providing or acquisition of counsel

has a *substitutionary,* and *not a supplementary,* effect.[7] By exercising his absolute and fundamental constitutional right to legal representation in the protection of his interests a defendant or petitioner has nonetheless elected not to serve as his own counsel in respect to that matter. The appointment or securing of counsel is an *alternate* remedy and includes no right to hybrid representation partly through said counsel and partly by oneself, as the winds of whim or even sporadic disagreement with counsel may on occasion move a defendant or petitioner. Having accepted the professional services of attorney Consiglio, Mr. Noyer simultaneously surrendered before this court, during and throughout the continuance of such representation, the right to act as self-counsel in all respects. While so represented legally a defendant-petitioner in a criminally-related matter is in a subservient capacity and subject to the dominant, primary and controlling status of his attorney in procedural decision making areas.[8] The principle is a sound one, promotive of the orderly process of judicial administration and protective of the interests of the individual ofttimes in spite of himself. Accordingly, we need

---

7. Attorney Consiglio was not designated as, and does not occupy the position of, advisory or standby counsel. See Pa.R.Crim.P. 318(d).

8. This observation is not intended to remove from the absolute control of an accused the final authority to make such fundamental determinations as to the type of plea he will enter and, if the plea is not guilty, whether he desires a jury or a non-jury trial, irrespective of whether the decision is in accord with or contrary to his attorney's counselling. The attorney must, however, be free to exercise his expertise in purely procedural matters unhampered by the demands, directions and interference of an unlearned client.

recognize no concomitant right of self-representation in Mr. Noyer relative to the instant matter. See United States ex rel. Snyder v. Mack, 372 F. Supp. 1077 (E.D. Pa. 1974); Com. v. Williams, 270 Pa. Superior Ct. 27, 410 A. 2d 880 (1979), allocatur refused by Pennsylvania Supreme Court (1980); Com. v. Ferenc, 92 Montg. 176 (1969), aff'd. mem., 216 Pa. Superior Ct. 782, 261 A. 2d 117 (1970); Com. v. Gorman, 28 Somerset 247 (1973).

Parenthetically, and as a corollary to the foregoing, we note that a judge has no obligation in the discharge of his judicial duties to respond to correspondence directed to him by criminal defendants or prison inmates whosecases are still pending in some aspect before him when able and competent counsel represents on the record the interests of such individuals. The prerogative and duty which devolves upon counsel to conduct, manage and supervise the protection and safeguarding of the client's interest includes the *exclusive* right and function of contact and communication with the court, whether the same is for the purpose of filing or formally presenting petitions, motions or like requests or for the purpose of making informal inquiry of the judge concerning the status of a particular matter.

Moreover, the present habeas corpus petition presents essentially the same matter which is currently pending ultimate decision in the Federal court system. See Noyer v. Zimmerman, Civil Action no. 81-1055, filed in the United States District Court for the Western District of Pennsylvania, a habeas corpus proceeding in which petitioner seeks his release from incarceration under the sentences imposed in the aforesaid Blair County Criminal Action nos. 1259 and 1260 of 1974 on the same ground as here asserted: alleged violation of his

constitutional rights for inordinate delay in disposition of the referenced PCHA proceeding. By his report and recommendation therein duly filed on August 5, 1981, a true, correct and complete copy of which is incorporated herein and made a part hereof, United States Magistrate Robert C. Mitchell comprehensively reviews the post conviction history of this case and concludes that Mr. Noyer is not being denied access to this court on any basis of unreasonable or unexplainable dely but that, to the contrary, the slowing of matters on this court's calendar is attributable to a combination of unfortunate circumstances therein recited in detail, including extended judicial illness, he consequently recommending dismissal of the Federal habeas corpus petition. On or about August 18, 1981 petitioner interposed and filed objection to said magistrate's report and recommendation, the matter thus still being outstanding.

Efforts to file repetitious claims should not be sanctioned. See Com. v. Runkle, 250 Pa. Superior Ct. 130, 378 A. 2d 488 (1977). The simultaneous pursuit of habeas corpus petitions in both the Federal and state courts is not to be encouraged: United States ex rel. Fox v. Price, 257 F. Supp. 493 (W.D. Pa. 1966), affirmed 385 F. 2d 839 (3d Cir. 1967). The same question cannot be presented in successive petitions for writs of habeas corpus before the same court (Com. ex rel. v. Shovlin, 24 Beaver 94 (1962)), and we fail to see how the prompt and orderly administration of justice is to be fostered by presenting a subsequent petition to the very court whose purported inaction is being complained of under a subsisting petition presently being considered by our Federal district court. We are in agreement with the observations of Magis-

trate Mitchell,[9] and for us formally to entertain the present petition would be not only duplicitous but also a vain and useless undertaking.

Furthermore, it would appear to this judge that Mr. Noyer's present request is premature in any event. *No briefs have been submitted* to this court on behalf of either petitioner or the Commonwealth relative to the PCHA proceeding. While oral argument of the respective positions is a discretionary right which the hearing judge may dispense with (cf. Servey v. Russell, 303 F. Supp. 831 (M.D. Pa. 1969)), and while we may accept a lack of demand therefor as a waiver of the right to present oral argument, we are not bound to excuse the submission of written argument in the form of briefs. See Pa.R.C.P. 211. The requirement of briefs is particularly important to the court when, as here, the disposing judge (a) was not the trial judge,[10] (b) did not conduct all of the PCHA hearings[11] and (c) such a myriad of issues are presented as to render desirable an organized crystallization thereof with citation of authority for one's position.

It is true that at the conclusion of the last hearing on December 30, 1980 this judge did not establish a time framework for the submission of briefs, owing

9. Such observations are hereinafter supplemented to make absolutely current this court's situation.

10. Former President Judge Robert C. Haberstroh (retired effective February 1, 1978) presided over the April 7-8, 1975 trial.

11. Former President Judge Robert B. Campbell (retired effective June 1, 1980 and died November 11, 1980) presided over the initial PCHA Hearing on March 22, 1979.

to the fact that the record was held open solely to enable the Commonwealth to obtain a certificate of custody from the Clerk of the United States District Court for the Western District of Pennsylvania relative to purported official records documents offered into evidence but objected to by the petitioner.[12] Nothing, of course, has existed to prevent the filing of a brief to date on petitioner's behalf, but we interpret the failure to do so as illustrative of the complexity of the many issues involved. The responsibility of the Commonwealth is to reply to a brief first to be filed by petitioner as the moving party and, as we have already noted, there is as yet no such brief to respond to. To avoid any further uncertainty or delay in this respect, we do hereby direct that a brief shall be filed on behalf of petitioner in the PCHA proceeding not later than 45 days immediately following receipt by petitioner's counsel of a copy of this opinion, with the Commonwealth's reply brief to be filed not later than 30 days after receipt by the Blair County District Attorney's Office of a copy of petitioner's brief.[13]

Finally, in the opinion of this judge the filing of the within habeas corpus petition is barred by legislative enactment. It has been held that by passage of the Post Conviction Hearing Act, and more par-

---

12. It would appear that such a certificate has never been secured by the Blair County District Attorney's office, or at least never submitted for the record.

13. This allowance of time is established during the initial days of a three-week (October 19-November 6, 1981) criminal court jury trial session, and in view of preoccupation therewith by both the Blair County District Attorney's Office and attorney Consiglio, as defense counsel in various cases; any shorter period would be unreasonable.

ticularly that section hereinbefore cited, the Pennsylvania General Assembly intended that habeas corpus proceedings as such would no longer be available to sentenced prisoners to litigate in state courts alleged deprivations of due process: United states ex rel. Gerlach v. Rundle, 326 F. Supp. 697 (E.D.Pa. 1971). This interpretation seems clearly confirmed by our state legislature's subsequent enactment of the Judicial Code, 42 Pa.C.S.A. §6503(b), wherein it is expressly provided: "Where a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings authorized by law." In our judgment, petitioner sought to circumvent the prohibition of this statute by filing a habeas corpus petition in Federal court.

Petitioner asserts that this judge has deliberately delayed termination of and withheld decision in his PCHA proceeding. Such allegations are repudiated by the fact that during his first year on the bench this judge, in conjunction with the efforts of the Blair County Court Administrator, scheduled and held four hearings in the matter, thereby completing the testimonial aspect of a PCHA petition which had been pending for approximately two and a half years prior thereto. In order to accommodate two of these hearings the rescheduling of other matters already tentatively set was accomplished. This consideration was extended to Mr. Noyer under the difficult circumstances of two newly-elected judges,[14] who took office for the first time on

---

14. This judge and (now President) Judge Thomas G. Peoples, Jr.

January 7, 1980 in a three-judge judicial district, being without the courthouse assistance of their terminally-ill President Judge for five months and thereafter, following his retirement as of June 1, 1980, laboring for six months under a judicial vacancy until confirmation of Judge-appointee Richard A. Behrens became effective on December 1, 1980. All of the foregoing occurred in the face of a continuous and significant backlog of cases in all divisions of this court, and particularly the criminal division, a situation still existing to the extent that approximately four courtroom days per month must be devoted exclusively to the hearing of Rule 1100 petitions for extension filed by the Commonwealth.

We recognize petitioner as an individual who delights in "playing games with the system."[15] His constitutional rights are nonetheless entitled to the fullest protection and preservation, and will be accorded the same to the utmost capability of this judge. The securing and enforcement of these rights, however, does not mean that petitioner has

---

15. Petitioner's impertinence is manifest from his reference to attorney Oliver E. Mattas, his former defense counsel, as "The Big Man" at page 12 of the habeas corpus petition. We also note that after attorney Mattas' testimony at the initial PCHA hearing conducted by this judge on March 13, 1980, as Mr. Mattas sat on the opposite side of the courtroom, petitioner displayed a sign to him containing the block-letter message "TRY FOR JUDGE," an apparent reference to Mr. Mattas' status as Blair County's newly-elected District Attorney. During an ensuing recess this judge, at side bar and off the record, explained to attorney Consiglio, who obviously was unaware of the incident, what had transpired and that a recurrence of such conduct would prompt court action; there was no recurrence when the hearing resumed.

automatic priority over all other matters properly pending before us, some of which have been awaiting decision—with testimony closed, briefs submitted and oral argument concluded—for lengthy periods. Mr. Noyer is well aware, from his many appearances before this court, that Blair County judges are presently required to spend such amounts of time presiding in the courtroom as are highly disproportionate to the periods available for administrative matters, research and opinions.[16] Our judicial district has no senior judges, and with the availability of visiting senior judges now restricted for budgetary reasons, the situation is not an encouraging one to the Blair County Bench.

The habeas corpus petition of Mr. Noyer is not properly before us because it is (a) beyond the scope of petitioner's retained authority, (b) duplicitous, (c) premature and (d) statutorily precluded, any one of which grounds alone is sufficient for its denial. Accordingly we enter the following

## ORDER

And now, October 26, 1981, the prayer of the petition for a writ of habeas corpus is refused and the motion contained therein for a rule to show cause is denied without hearing.

---

16. While President Judge Peoples and this judge share the services of an outstanding legal assistant, Jo-Anne O. Halpern, Esq., the volume of matters for disposition is such that this judge does much of his own research and opinion work—including that involved in the instant matter.