Commonwealth *v.* Snyder, Appellant.

434

Argued January 14, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Robert P. Grim,* Assistant Public Defender, for appellant.

*Grant E. Wisner,* Assistant District Attorney, with him *Robert L. Van Hoove,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 25, 1971:

On October 13, 1969, the Mertztown postoffice, in Long Swamp Township, Berks County, was robbed.

Roger K. Snyder, appellant, was arrested, and on February 26, 1970 was indicted by the Berks County grand jury on charges of burglary, larceny, receiving stolen goods, and possession of burglary tools.

Appellant's case was called on June 3, 1970, but a mistrial was declared when it was discovered that the Public Defender representing the appellant had represented the Commonwealth's chief witness in a previous case. *Another Public Defender was appointed to represent the appellant,* and the second trial commenced before a Judge and jury. On October 1, 1970, the jury found appellant guilty of burglary, larceny and possession of burglary tools, and not guilty of receiving stolen goods. Thereafter a judgment of sentence was entered.

The present appeal was not taken from the judgment of sentence which was imposed by the Court after the aforesaid verdicts; rather, it was taken from the orders of the lower Court imposing sentences for two contempts of Court.

Appellant raises two contentions in this appeal: (1) his behavior was not contemptuous, and (2) he should have been granted a jury trial on the contempt charges. It is important to note at the outset that appellant raises no complaint about the ineffectiveness of counsel, nor does he allege who his uncalled witnesses were or what their testimony would have been if they had been called.

While William Raub, a witness for the Commonwealth, was being cross-examined, appellant slapped his hand loudly on a table and shouted, "You're a liar." The trial Judge did not cite appellant for contempt for this misbehavior, but warned him that such outbursts were not permitted, and that, if it happened again, he would hold the appellant in contempt.

After the defense had finished summation of its argument to the jury, and the Commonwealth was about to begin its summation, the following conduct resulted

in the first contempt citation: "THE COURT: The Commonwealth may make its speech. MR. HEVALOW: May it please the Court, Mr. Grim, Members . . . ROGER K. SNYDER: Whoa, whoa, whoa. Hold it. Wait a minute. Hold the phone. Members of the Jury, I want you to understand . . . THE COURT: Just a moment. ROGER K. SNYDER: I have witnesses. He didn't bring them. Where are they . . . THE COURT: Just a moment. I warned you once before. ROGER K. SNYDER: Are you telling me I can't have my witnesess here? THE COURT: Just a moment. Are you going to keep quiet? ROGER K. SNYDER: Are you telling me . . . THE COURT: Are you going to keep quiet? ROGER K. SNYDER: I'm quiet. THE COURT: One more word, and I will have to remove you from the courtroom while the Commonwealth's speech is being made. I don't want to do that, but I do insist on order and decorum in the courtroom. *You are represented by a capable lawyer.** ROGER K. SNYDER: Remove me. *The man did not represent me.* Sheriff, put the cuffs on. THE COURT: Just a minute, Sheriff. Wait a minute. I want to give you another chance. ROGER K. SNYDER: I want my defense witnesses here. Are you denying me the right to have my defense witnesses here? THE COURT: Under the circumstances, Sheriff, remove him from the courtroom. I will recess five minutes if you will agree—just a moment, Sheriff—Mr. Snyder, if you will agree that you will come back and remain quiet. ROGER K. SNYDER: I want my defense witnesses. That's what I want. That's my right. Are you denying me that right? THE COURT: Sheriff, remove him from the courtroom. Hold him back here in the lawyers' lounge."

After the jury retired for its morning recess, the appellant was returned to the courtroom, and the following conduct resulted in the second contempt cita-

---

* Italics throughout ours, unless otherwise indicated.

tion: "THE COURT: The jury has retired. Bring back the defendant. [The defendant is present.] Will the defendant stand here (indicating). Mr. Snyder, this Court dislikes any occasion to exclude a defendant from a courtroom. The power to do so was recently given by the Supreme Court of the United States, with the understanding that the Trial Judge must protect the decorum of the courtroom during the trial. You were absent for the speech of the District Attorney, making the arguments of the Commonwealth. To protect your interests and so that the appellate court, if necessary on review, will know what transpired in your absence, the court reporter has taken down the entire speech of Mr. Hevalow. It is of record if necessary. The only remaining phase of this case is the Charge of the Court as to the law. I am willing to have you returned to the courtroom because I would like to have you present, *if you will assure and promise me that you will sit there quietly and not make any outbursts and behave.* It's up to you. ROGER K. SNYDER: I want to know one thing. Why was I denied the right to have my defense witnesses brought forth? THE COURT: You have a lawyer. ROGER K. SNYDER: Why did he not perform this duty? THE COURT: *He performed every duty.* ROGER K. SNYDER: He performed no duty. THE COURT: I made rulings in this case, and I am not going to argue over the rulings I have made. If I am incorrect, let the appellate courts say so and not you. ROGER K. SNYDER: I don't want to be here when they come back. THE COURT: You don't want to be here for the Charge? ROGER K. SNYDER: Why should I be? I . . . THE COURT: Excuse me. I have asked you a question. Why don't you want to be here for the Charge? ROGER K. SNYDER: How can I behave when I was denied my rights? THE COURT: That is a matter of appellate review. You had a lawyer. ROGER K. SNYDER: I had a lawyer, what did he do? THE COURT: I explained your rights, and you did not

indicate that you did not want to go ahead without a lawyer. ROGER K. SNYDER: I did indicate. THE COURT: I will let the record speak for itself. ROGER K. SNYDER: Let the record speak for itself. THE COURT: Then you don't promise me to remain quiet? ROGER K. SNYDER: I don't know what's going on. What do I know what's going on? Am I suppose to come in and sit two days ... THE COURT: The Charge of the Court as to the law is the last phase of this case. Do I understand you won't agree to remain quiet during the Charge? ROGER K. SNYDER: I didn't say ... THE COURT: Will you ... ROGER K. SNYDER: I don't know what the circumstances will be. THE COURT: I am not going to have outbursts. ROGER K. SNYDER: There's no outbursts. The question was, why I was denied this right. THE COURT: All right, I have tried everything to assure that the defendant will behave himself if returned to the courtroom. He has refused and failed to promise me he will. He may be returned to the lawyers' lounge. Everything the Court says in the Charge will be a matter of record, but I can't take the chance that he will disrupt the Charge by another outburst. At the conclusion of the Charge and before the jury returns a verdict, I will deal with the question of contempt. If you, at any time, decide you want to return and will behave yourself, tell the Sheriff. ROGER K. SNYDER: *To this prejudiced courtroom, not a chance, Baby.* THE COURT: For the record, he said, 'To this prejudiced courtroom, not a chance, Baby.' "

The day following the issuance of the two contempt citations, a hearing was held before the trial Judge. Appellant's trial counsel was present, but the appellant chose to act as his own attorney. After argument, the Court found appellant guilty of contempt on both citations. Appellant was given a three-month sentence on the first contempt citation and a six-month sentence on the second contempt citation.

Appellant asserts that the above-mentioned disorderly, disruptive and insulting conduct does not amount to contempt, and that, in any event, the sentences imposed by the Court constituted a violation of his Constitutional right to a jury trial on these contempt charges. We disagree. As this Court so pertinently said in *Levine Contempt Case,* 372 Pa. 612, 95 A. 2d 222 (page 618): "Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect." In *Brocker v. Brocker,* 429 Pa. 513, 241 A. 2d 336, we stated (page 523), quoting from *Knaus v. Knaus,* 387 Pa. 370, 375, 127 A. 2d 669: " 'A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto [as] to interfere with its immediate business, and punishment for such contempts may be inflicted summarily: Act of June 16, 1836, P. L. 784, §§23, 24, 17 P.S. §§2041, 2042; Levine Contempt Case, 372 Pa. 612, 95 A. 2d 222; Snyder's Case, 301 Pa. 276, 152 A. 33. . . . ' "

As the Supreme Court of the United States so pertinently said in its recent decision in *Illinois v. Allen,* 397 U.S. 337 (pages 343-344, 346-347): "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take

him out of the courtroom until he promises to conduct himself properly.

". . . But our courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes. As guardians of the public welfare, our state and federal judicial systems strive to administer equal justice to the rich and the poor, the good and the bad, the native and foreign born of every race, nationality, and religion. Being manned by humans, the courts are not perfect and are bound to make some errors. But, if our courts are to remain what the Founders intended, the citadels of justice, their proceedings cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the [Pennsylvania] trial judge in this case."

A reading of the record clearly establishes that appellant's behavior in both instances was undoubtedly disruptive and, we believe, contemptuous of an orderly trial and proper courtroom procedure, and justified the resulting contempt sentences.

## A JURY TRIAL

Since the contempt convictions occurred on October 2, 1970, we must determine appellant's right to a jury trial in light of the decisions of the Supreme Court of the United States, especially in *Baldwin v. New York*, 399 U.S. 66 (June 22, 1970). The decisions of the United States Supreme Court in *Duncan v. Louisiana*, 391 U.S. 145, and *Bloom v. Illinois*, 391 U.S. 194, clear-

ly established that a defendant was entitled to a jury trial for a *serious* offense. However, there was much confusion as to what constituted a serious offense as distinguished from a petty offense. This confusion was laid to rest in *Baldwin v. New York,* 399 U.S., supra, in which the Court said (page 69): ". . . we have concluded that no offense can be deemed 'petty' for purposes of the right to trial by jury *where imprisonment for more than six months is authorized."*

Pennsylvania does not have a *statutorily established maximum sentence for direct criminal contempts,* and therefore we must look to the length of the sentence which the Court actually imposed to test for "seriousness." *Bloom v. Illinois,* 391 U.S., supra. In this case, each of the two sentences which were imposed for the two separate direct criminal contempts was less than the *"more* than six months" standard which was established as the cut-off point between "petty" and "serious" crimes. Therefore, *Baldwin v. New York,* 399 U.S., supra, in no way required appellant to be given a jury trial on either of said contempt charges.

The very recent United States Supreme Court decision in *Mayberry v. Pennsylvania,* 400 U.S. 455 (1971), even if it be considered retroactive, does not aid appellant. The record in the instant case, unlike that in *Mayberry,* does not present a situation in which the trial Judge permitted himself to become personally embroiled with the defendant. Whatever disagreement existed stemmed from defendant's resistance to the authority of the Court and its exercise during the trial. While the Judge dealt firmly with defendant, as we believe the circumstances required, there was no intemperate wrangling or manifestation of bias. The conduct of the trial Judge was in keeping with that of a well-balanced, fair and wise Judge. Under such circumstances, it was not Constitutionally impermissible for the Judge who had presided during the trial and

442

heard and witnessed defendant's contemptuous conduct, to adjudicate the contempt charges. Accord, *Ungar v. Sarafite,* 376 U.S. 575, 84 S. Ct. 841 (1964), and *Nilva v. United States,* 352 U.S. 385, 77 S. Ct. 431 (1957).

Judgment of sentences affirmed.