447 A.2d 250

**COMMONWEALTH of Pennsylvania**

v.

**W. A. "Tony" BOYLE, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1982.

Decided July 8, 1982.

Reargument Denied Nov. 29, 1982.

488

Clarence D. Bell, Jr., Barry W. Van Rensler, Media, for appellant.

Richard A. Sprague, Sp. Prosecutor, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

NIX, Justice.

This is a direct appeal from a conviction on three charges of murder of the first degree as a result of the death of Joseph, Margaret, and Charlotte Yablonski.[1] At trial the Commonwealth offered evidence to establish that Mr. Boyle, appellant, instigated and participated in a conspiracy to kill Joseph Yablonski, who was attempting to wrest control from Boyle of the United Mine Workers' Union (UMW). As a result of this conspiracy, the jury found that Joseph Yablonski, his wife and his daughter were killed in January 1970.[2] Appellant sets forth a myriad of challenges to this most recent conviction. Many of them are totally without merit and do not require explication.[3] We will address only the more substantial questions raised.

1. This retrial was the result of our decision in *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977) wherein we reversed the judgment of conviction and ordered a new trial on the grounds that the exclusion of proffered testimony relating to irregularities in the financial records in a local union was error because it had relevance in establishing that the local union officials had a motive to kill which was not shared by the appellant. This writer authored a dissenting opinion. *Commonwealth v. Boyle, supra*, 470 Pa. at 361, 368 A.2d at 670–671 (1977) (Nix, J., dissenting joined by former Chief Justice Jones).

2. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 722(1).

3. These remaining issues are:
 (a) Whether the court erred in refusing to allow certain defense evidence to be presented through the testimony of certain witnesses or whether the court erred in failing to allow the defense to call these witnesses as of cross-examination?
 (b) Whether the court erred in refusing to allow witnesses to be called to show that other United Mine Workers Districts went directly to him for loans?
 (c) Whether the court erred in failing to sustain defense objections to the closing speech of the prosecutor?
 (d) Whether the court erred in not providing appellant the Government reports and records concerning District 19?

 Appellant argues that the trial judge, who also presided at the first trial, by refusing a motion of recusal committed reversable error requiring a new trial. Recusal is required whenever there is substantial doubt as to a jurist's ability to preside impartially.[4] *Commonwealth v. Knighton,* 490 Pa. 16, 415 A.2d 9 (1980); *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973). *See* Code of Judicial Conduct Canon 3C(1)(a) ("Disqualification"); ABA Project on Standards for Criminal Justice, Standards Relating to: The Function of the Trial Judge § 1.7 ("circumstances requiring recusation") (Approved Draft, 1972).

 The mere participation by the presiding judge in an earlier stage of the proceeding neither suggests the existence of actual impropriety nor provides a basis for a finding of the appearance of impropriety. *U.S. v. Lowrey,* 77 F.Supp. 301 (E.D.Pa.1948) *affirmed* 172 F.2d 226 (1949). *See, Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Snyder,* 443 Pa. 433, 275 A.2d 312 (1971); *Commonwealth v. Smith,* 274 Pa.Super. 280, 418 A.2d 406 (1980); *Commonwealth v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978). Moreover, appellant fails to identify any specific event or incident during the earlier proceeding which would reasonably give rise to a question of the court's objectivity.[5]

(e) Whether the court erred in denying the pre-trial application to dismiss the charges under Rule 1100?

(f) Whether appellant was denied due process of the law?

(g) Whether the court erred in denying certain points for charge?

(h) Whether the court erred in charging appellant would be responsible for the acts of his fellow co-conspirators.

4. A jurist's impartiality is called into question whenever he has doubts as to his ability to preside objectively and fairly in the proceeding or where there exists factors or circumstances that may reasonably question the jurist's impartiality in the matter. *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973).

5. We have noted that the exposure of a judge in a pretrial proceeding to highly prejudicial and inflammatory evidence may provide a basis for recusal of that jurist from presiding at the trial of that matter where the objectionable evidence would not be admissible at the trial

■ Appellant seeks to support his position by arguing that the charged bias can be demonstrated by the rulings of the challenged jurist at the second trial. He contends the record reflects this pattern of bias and that he is entitled to the award of a new trial presided over by a different judge. *Commonwealth v. Goodman, supra,* 454 Pa. at 360, 311 A.2d at 653–654.

The fact that the presiding judge's rulings in the former trial were similar to his rulings in the retrial does not, standing alone, establish a pattern of conduct which would compel a finding of bias or partiality.[6] If the rulings at the second trial constituted a fair exercise of discretion, the fact that the trial judge had previously ruled in a similar manner under similar circumstances is to be expected.

Appellant cites as illustrative of the prejudice of the court the ruling relating to Mr. Boyle's daughter's admission *pro hac vice* and the exclusion of the accused at side bar and in-chambers conferences. These rulings were clearly correct and in no way suggested a prejudice by the court against the appellant.[7] The other alleged erroneous rulings to demon-

stage. *See Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 312 (1976).

**6.** It is significant that there is no allegation that the court received any information from an extra-judicial source that may have inspired a prejudice against the appellant. *See, e.g., U. S. v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Berger v. U. S.,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). The allegation is confined to the court's participation in the former trial.

**7.** Appellant claims that the court erred in refusing to allow his daughter, Antoinette Boyle, a member of the Montana Bar to act as his co-counsel. The record does not indicate that Ms. Boyle's ability to contribute to the defense was impaired by denying her admission *pro hoc vice.* The defense did not intend to have Ms. Boyle serve as lead counsel, her role was merely to assist other counsel. Without her formal admission *pro hoc vice,* she was free to remain in the courtroom and to participate in the conferences between counsel and the client. Thus, the ruling to which objection is now being made relates only to form and not to substance. *See Ross v. Reda,* 510 F.2d 1172 at 1173 (6th Cir. 1975); *Thomas v. Cassidy,* 249 F.2d 91 (4th Cir. 1957), *cert. denied,* 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958).

strate the court's prejudice against the appellant are equally without merit. Not only did these rulings reflect a proper exercise of discretion, there was nothing to suggest a bias or unfairness to the defense. To the contrary, the record is replete with instances where the court displayed an extraordinary effort to protect the rights of appellant.

■ Appellant also charges that the trial court erred in allowing to be read to the jury the entire transcript of the sentencing of Turnblazer, a co-conspirator. First, the allegation is factually incorrect. The lower court deleted at defense counsel's request that portion of the transcript that contained Turnblazer's confession. Even more significant, it was the defense that first referred to portions of the transcript of Turnblazer's sentencing in an effort to destroy Turnblazer's credibility as a witness for the Commonwealth.

Turnblazer, the then president of District 19, was a key Commonwealth witness in that it was his testimony which provided the link between Boyle and the murders. On cross examination the defense attempted to attack Turnblazer's credibility by showing that he had received favorable consideration from the Commonwealth for his testimony against Boyle. The defense referred to portions of the transcript of Turnblazer's sentencing to establish that an agent of the FBI and the Special Prosecutor had deliberately misinformed the sentencing court of the extent of Turnblazer's cooperation in the prosecution of Mr. Boyle.[8] Although this evidence was objected to by the Commonwealth as hearsay, the trial court permitted a number of questions in this vein

Mr. Boyle contends that the court erred in refusing to allow him to be present at in-chambers and sidebar conferences. Appellant's counsel attended the sidebar conferences and he was not limited in the right to confer with appellant prior to, during and after these discussions. A defendant's presence in chambers and at sidebar is not required where he is represented by counsel. *Cf. Rogers v. U. S.*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).

8. Mr. Turnblazer entered a plea of guilty before the federal court for violating Yablonski's civil rights. *See* 18 U.S.C. § 241. The Commonwealth did not prosecute this witness on the state murder charges.

to establish the defense theory that the witness had received favorable treatment.

On redirect, the prosecution requested permission to introduce the entire transcript to the jury. As previously noted, the portion of the transcript containing Turnblazer's confession was deleted. An objection to a reference of Boyle's first trial and conviction in the transcript was overruled.

The Commonwealth maintained that the fact of Mr. Boyle's first trial and conviction was information necessary for the jury to properly assess the appellant's charge that the Commonwealth displayed favoritism in its treatment of Mr. Turnblazer. The Commonwealth's explanation for seeking leniency for Turnblazer in the federal proceedings resulted from Turnblazer's cooperation during the first trial of Mr. Boyle. They contend that Turnblazer's testimony at that trial in large measure brought about the conviction of Boyle. This, of course, was in response to the defense's contention that the Commonwealth's favorable treatment of Turnblazer was designed to influence his testimony at the second trial. Mr. Turnblazer's sentencing in the federal matter occurred after the completion of the first trial and before the commencement of the second trial.

Ordinarily, the fact of an earlier trial resulting in a conviction would have no relevance in a retrial. Here, however, the tactic taken by the defense in attacking Turnblazer's credibility made that information relevant, as supplying the reason for the Commonwealth position at the sentencing of Turnblazer. The prosecution's case rested heavily upon the jury's acceptance of the testimony offered by the witness Turnblazer. The defense on cross examination had attempted to establish that the comparatively lenient treatment accorded to Turnblazer was the result of collusion by the Special Prosecutor and the FBI to elicit damaging testimony against Mr. Boyle at the second trial. The reference to the first trial and conviction and Mr. Turnblazer's role in bringing about that result was obviously relevant in permitting the jury to consider whether the sentence imposed was appropriate in light of Turnblazer's

*prior* cooperation, which was called to the sentencing court's attention.

The appellant does not contest the relevancy but stresses the prejudicial impact of this evidence. It is argued that the probative value is far outweighed by the resultant prejudice that flowed from revealing the fact of the earlier trial and conviction. We have frequently observed that even when evidence is determined to be relevant, the trial court in its discretion may exclude it if the prejudicial impact outweighs its probative value. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972) (plurality opinion); *Commonwealth v. Barnak*, 357 Pa. 391, 54 A.2d 865 (1947); J. McCormick, Evidence § 185, at 438–40 (2d ed. 1972). As has been noted:

> This balancing of intangibles—probative values against positive damages—is so much a matter where wise judges in particular situations may differ that a leeway of discretion is generally recognized. J. McCormick, Evidence § 185, at 440.

Here the relevancy of this evidence was occasioned by a defense tactic. The credibility of Turnblazer was not a collateral issue, but rather the jury's acceptance of his testimony was critical to the success of the prosecution. Additionally, as the trial court noted, the first was nationally publicized and the voir dire disclosed that six members of the jury admitted they were aware of the earlier trial and conviction. Under all of these circumstances, we do not believe the prejudicial effect of this reference to the earlier proceeding so outweighed the probative value of the evidence as to deprive appellant of a fair trial and requires the award of a new trial.[9]

■ Appellant assigns as error the admission into evidence of certain portions of his testimony in earlier proceedings.

---

**9.** Appellant also claims that by allowing the jury to hear Turnblazer's sentencing transcript, the prosecution unduly bolstered Turnblazer's credibility because of statements made by individuals concerning Turnblazer's honesty and cooperation. We do not believe that the Commonwealth's evidence represented an inordinate response to the defense's efforts to challenge Turnblazer's truthfulness.

After the introduction of these statements, the Commonwealth proceeded to establish that they were untruthful. It is argued that Mr. Boyle did not testify in his second trial and therefore evidence impeaching his credibility as a witness was not relevant. *Cf. Commonwealth v. Scoleri*, 432 Pa. 571, 248 A.2d 295 (1968); *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A.2d 236 (1967); *Commonwealth ex rel. Marino v. Myers*, 419 Pa. 448, 214 A.2d 491 (1965); *Commonwealth v. Butler*, 405 Pa. 36, 173 A.2d 468 (1961). It is also contended that these prior statements did not constitute admissions and therefore should not have been offered as substantive evidence.

The factual setting from which this objection arises is as follows: Exhibit 68, in the instant trial, was a copy of what purported to be the minutes of an Executive Board meeting of the UMW held in January 1970. These minutes stated that Pass, a co-defendant, had informed the Board of the formation of the Research and Information Committee (R & I Committee) at the 1968 Denver Convention of the organization.[10] It was the theory of the Commonwealth's case that the placing of this statement in the minutes was part of the design to conceal the transfer of the money used to pay the assassins who killed the Yablonski family members. In attempting to disassociate himself from any connection with this plot to murder, Boyle testified at his first trial that he had no involvement in the preparation of the copy of the minutes (Ex. 68) which Pass delivered to Turnblazer. At the second trial, the Commonwealth read to the jury the testimony of Boyle, from the earlier proceeding, denying touching these papers.[11] Thereafter, a fingerprint expert testified that Boyle's fingerprint had been found on this exhibit.

10. Mr. Pass made arrangements with Mr. Boyle to secure $20,000 to be used to hire the murderers of the Yablonskis. The Research & Information Committee (R & I Committee) was formed as a front to launder the funds to be paid to the hired assassins.

11. The dissenters' characterization of Mr. Boyle's testimony regarding his handling of the minutes in question is inaccurate. Nowhere in the relevant portions of this testimony does Mr. Boyle assert that he had no recollection of the events in question. Moreover, if the

The prosecution also introduced that portion of the record from the first trial wherein Boyle had denied sitting with Turnblazer during a 1972 airplane trip. It was claimed by the Commonwealth that during this trip Boyle and Turnblazer had discussed aspects of the conspiracy. The Commonwealth called, at the second trial, a witness who testified that Boyle had in fact sat beside Turnblazer during that flight.

Additionally, the Commonwealth also introduced during the second trial Boyle's testimony before the 1972 grand jury his testimony at the trial of co-conspirator Prater and testimony at his first trial to show that on each occasion he had given a different explanation of the formation of the R & I Committee.

■ Appellant is correct in stating that since he did not testify in the second trial, his credibility as a witness was not in issue and therefore there was no basis for the allowance of evidence to demonstrate his unreliability as a witness. *Cf. Commonwealth v. Scoleri, supra; Commonwealth ex rel. Sprangle v. Maroney, supra; Commonwealth ex rel. Marino v. Meyers, supra; Commonwealth v. Butler, supra.* It is also clear that the purpose for introducing this evidence was to establish Boyle's untruthfulness, since the facts that appellant had handled Exhibit 68 and sat next to Turnblazer, during the 1972 airflight, could have been established by direct evidence, without reference to Boyle's statements on those subjects. Moreover, even where impeachment evidence is properly admitted, it may not be used as substantive evidence. *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875

dissenters seek to imply that Mr. Boyle's handling of the minutes in question constituted a qualified denial, this too is without support in the record. We believe that a fair reading of the testimony (N.T. 7-76—7-85) would justify a factfinder concluding that Mr. Boyle categorically denied touching the minutes in question. We note further that appellant in his brief also views his trial testimony as a categorical rather than a qualified denial.

Use of an FBI Agent ... to show that the fingerprint of the defendant Boyle was found on exhibit C–8 *when during the first trial the defendant Boyle had denied ever touching exhibit C–8.* Appellant's Brief, p. 24.

(1976); *Commonwealth v. Tucker*, 452 Pa. 584, 307 A.2d 245 (1973); *Commonwealth v. DePasquale*, 424 Pa. 500, 230 A.2d 449 (1967).

Nevertheless, we cannot accept appellant's ultimate conclusion that the admission of this testimony was error. The justification for the admission of this testimony was not for the purpose of improperly commenting upon his silence at the second trial nor as impeachment of his credibility as a witness, but rather as substantive evidence of his guilt. This jurisdiction has long recognized the evidentiary principle that the making of false or contradictory or conflicting statements by the accused are admissible "since the jury may infer therefrom that they were made with an intent to divert suspicion or to mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of guilt." *Commonwealth v. Bolish*, 381 Pa. 500, 525, 113 A.2d 464, 476 (1955). Accord *Commonwealth v. Cristina*, 481 Pa. 44, 391 A.2d 1037 (1978) *cert. denied* 440 U.S. 925, 99 S.Ct. 1255, 59 L.Ed.2d 479 (1979); *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963); *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960); *Commonwealth v. Lowry*, 374 Pa. 594, 98 A.2d 733 (1953); *Commonwealth v. Homeyer*, 373 Pa. 150, 94 A.2d 743 (1953); *Commonwealth v. Jones*, 341 Pa. 541, 19 A.2d 389 (1941); *Commonwealth v. Jones*, 297 Pa. 326, 146 A. 905 (1929). *Commonwealth v. Spardute*, 278 Pa. 37, 122 A. 161 (1923).

■ The fact that Boyle exercised his right of silence during the second trial did not insulate him from the consequences of his earlier testimony. It has long been recognized that testimony from an earlier trial may be introduced in the prosecution's case against a defendant regardless of whether that defendant takes the stand or not in the second proceeding. *Commonwealth v. Doughty*, 139 Pa. 383, 21 A. 288 (1891); *Commonwealth v. House*, 6 Pa.Super.Ct. 92, 93 (1897). *See also, Harrison v. U.S.*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *Walder v. U.S.*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1953); *Edmonds v. U.S.*, 273 F.2d 108

(D.C.Cir., 1959); *Ayres v. U.S.*, 193 F.2d 739 (5th Cir., 1952); *Smith v. Slayton*, 369 F.Supp. 1213, (D.C.Va., 1973); *U.S. v. Grunewald*, 164 F.Supp. 644 (S.D.N.Y., 1958).

It is generally held, unless a statute directs otherwise, that a defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case.[3] The fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible. *Heller v. United States*, 7 Cir., 57 F.2d 627, certiorari denied 1932, 286 U.S. 567, 52 S.Ct. 647, 76 L.Ed. 1298; *State v. Simmons*, 1908, 78 Kan. 852, 98 P. 277; *State v. McPherson*, 1915, 77 Or. 151, 149 P. 1021; *State v. King*, 1917, 102 Kan. 155, 169 P. 557; *Scherpig v. State*, 1929, 112 Tex.Cr.R. 61, 13 S.W.2d 872.

---

[3] See the annotation in 5 A.L.R.(2d) at p. 1408, in which cases to that effect from twenty jurisdictions are collected....

*Edmonds v. United States*, 273 F.2d 108, 112–13 (D.C.Cir., 1959).

This principle has long been recognized in this jurisdiction. *Commonwealth v. House*, 6 Pa.Superior Ct. 92 (1897). In *House* the Superior Court stated:

The general proposition that the testimony of a defendant cannot be used against him on a second trial of the same indictment, if he elects not to go upon the witness stand, is not strongly urged in the present case, and is not well founded upon principle or authority. He cannot be compelled to give evidence against himself, but if he gives it voluntarily he cannot object to having it used against him. His constitutional privilege, as far as that testimony is concerned, is waived, and cannot be reclaimed in any subsequent trial of the same indictment. As was said in *Com. v. Doughty*, 139 Pa. 383 [21 A. 228] his admissions or declarations would be evidence against him; and if so why not his testimony under oath?

*Id.* at 104.

Moreover, the testimony taken from the first trial and introduced at the second trial was "otherwise admissible" as a voluntary admission. Although the responses of Mr. Boyle standing alone may appear neutral, when coupled with the evidence of their falsity those statements assist in proving his consciousness of guilt and efforts to avert suspicion. This evidence of the earlier false statements had independent probative value and was properly submitted to the jury to be considered as proof of a consciousness of guilt.

As a corollary argument appellant contends the trial judge refused to permit defense counsel to read into the record applicable balancing portions of the records in the prior proceedings to explain or rebut the portions introduced by the Commonwealth. This argument sets forth the bald assertion that the segments introduced distorted the prior testimony without any attempt to specify those portions of the record that would have clarified or changed the meaning of the evidence introduced. We have read these portions of the prior testimony in context and find no indication of a distortion or unfairness. Hence we conclude that this claim is also without merit.[12]

Accordingly, the Judgments of Sentence are affirmed.

HUTCHINSON, J., filed a concurring opinion.

FLAHERTY, J., filed a dissenting opinion in which ROBERTS and LARSEN, JJ., joined.

FLAHERTY, Justice, dissenting.

I dissent. Notwithstanding authority in this jurisdiction in support of the principle that evidence of an accused's false statements to police or other authorities is, generally, admis-

---

12. The charge by the dissenters that appellant was not afforded an opportunity to explain his prior statements is totally without factual support. This testimony was offered by the Commonwealth in its case in chief. The defense was free to offer testimony to explain these obvious inconsistencies and/or to establish the truthfulness of Mr. Boyle's responses. Moreover, as previously noted, Mr. Boyle has failed to specify any segment of his prior testimony which would have constituted an explanation or have indicated a distortion of those portions introduced by the Commonwealth.

sible as circumstantial evidence of the accused's guilty conscience and, thus, of guilty conduct, it was error to admit such evidence in the instant case.

Several times during presentation of the Commonwealth's case, the prosecutor read into evidence excerpts from appellant's testimony in his prior trial, since appellant elected not to testify in the trial now in question. After introducing appellant's prior testimony, the Commonwealth presented evidence that the prior testimony contained misstatements of fact. Specifically, the challenged evidence consisted of the following:

1. Appellant's prior testimony that he did not recall giving co-conspirator Pass minutes of the UMWA Executive Board meeting of January 22, 1970 and that he did not remember having the minutes prepared for delivery to Pass, evidence which was followed immediately by testimony of prosecution witnesses indicating that the FBI obtained from Turnblazer a copy of the minutes of that meeting bearing appellant's fingerprint;

2. Appellant's testimony at his prior trial that he sat with Ed Carey, UMWA general counsel, on a flight to Pittsburgh to testify before a Grand Jury. Commonwealth witness Suzanne Richards, appellant's executive assistant during the period 1969–1972, subsequently testified appellant sat instead with accused co-conspirator Turnblazer on the flight. Turnblazer had already testified he was seated with appellant and that, during the flight, appellant stated, in reference to UMWA Research & Information (hereinafter "R & I") committeemen, "It looks like some of the boys are talking, and when we finish with this grand jury get back to the district and try to keep a lid on it"; and

3. Appellant's testimony to the Pittsburgh Grand Jury, at co-conspirator Prater's trial, and at his own prior trial, that the R & I Committee was organized pursuant to an agreement among appellant, Pass, and Turnblazer made at a convention in 1968. In contrast, two Commonwealth witnesses, co-conspirators Pass and Turnblazer, testified that the R & I Committee was invented in 1969 to finance the

Yablonski murder. (The Commonwealth's theory is that money was "kicked back" by the committeemen to Pass for the purpose of financing the murder, and that this financing scheme was authorized by appellant.)

The relevance and, hence, admissibility of appellant's prior testimony that he did not recall giving Pass the minutes of the UMWA Executive Board meeting is questionable even on the Commonwealth's theory of admissibility, for there is a substantial difference between the situation where a witness affirmatively states his recollection of an event and one where, as here, the witness states he has no recollection. Further, testimony indicating appellant forwarded minutes of the meeting to Pass does not significantly undercut appellant's statement he had no *recollection* of furnishing the minutes to Pass. Hence, this instance of the Commonwealth's attempt to establish appellant's consciousness of guilt is to be questioned.

Appellant's prior testimony, introduced by the Commonwealth for the purpose of being contradicted by its other evidence, provided circumstantial evidence of guilt of the weakest kind—evidence which was also perfectly consistent with innocence. *See, Commonwealth v. New*, 354 Pa. 188, 205–206, 47 A.2d 450, 460–461 (1946) and cases cited therein. The cumulative effect of the prosecution's repeated attempts to stigmatize appellant as a dishonest and, hence, "bad" man may have influenced the jury to return a verdict of guilt. Deceit, however, does not a murderer make; and the danger of conviction based upon a defendant's deceitful character is particularly acute in a case such as this where the evidence of guilt consists solely of the testimony of co-conspirators, testimony which is looked upon with disfavor because it emanates from a corrupt and polluted source. *See, Commonwealth v. Sisak*, 436 Pa. 262, 265, 259 A.2d 428, 430 (1969).

The trial court's exclusion of additional prior testimony, offered by appellant, to explain his apparent "falsehoods", enhanced the opportunity for prejudice. It would have been unfair for the Commonwealth to have discredited appellant

at his first trial by use of prior inconsistent statements without having provided appellant an opportunity to explain those previous statements. Where, as here, appellant has not been given the opportunity to explain prior statements, fairness forecloses introduction of the discrediting evidence. *See, Commonwealth v. House*, 6 Pa.Super. 92 (1897).

A careful review of the evidence in this case indicates that the evidence of appellant's "falsehoods" was prejudicial to the defense. I would, therefore, grant a new trial.

ROBERTS and LARSEN, JJ., join this dissenting opinion.

HUTCHINSON, Justice, concurring.

Because I believe appellant was fairly tried and convicted by a jury which had before it more than sufficient proper evidence to determine his guilt, I concur in affirming that conviction.

However, I am constrained to comment on one issue appellant raises. At his second trial, which resulted in the conviction now before us, appellant exercised his constitutional right not to testify. Nevertheless, the prosecution was allowed to read into evidence portions of his testimony at the first trial. Those portions were contrary to other direct evidence of the Commonwealth and were admitted for the purpose of establishing appellant lied to conceal his involvement, from which deliberate concealment the jury could infer consciousness of guilt. The admission of this prior testimony was based on long standing clear authority in the decisions of this court cited by Justice Nix. Opinion of the Court, *ante* at 255. The dissent correctly points out that such circumstantial evidence of guilt is weak. In this respect it is analogous to evidence of flight to avoid prosecution. Considering the whole record, I do not believe its admission warrants a reversal of this conviction. Nevertheless, the use of such prior testimony to establish guilt must be closely scrutinized and its admission is not to be lightly condoned, lest we permit a jury to assume the very point in issue, the truth of the Commonwealth's contradictory evidence. I believe trial judges would be well advised to

consider this factor in future cases in deciding whether or not to exercise their discretion in favor of admissibility. Thus, the trial judge should first determine there is other strong evidence of guilt, *See Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964) (flight as evidence of consciousness of guilt may form the basis in connection with other proof from which guilt may be inferred), and that the Commonwealth's evidence contrary to defendant's prior testimony clearly and convincingly shows that prior testimony to be false.