J-S85033-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEVEN PATRICK REBERT | |
| Appellant | No. 1036 WDA 2017 |

Appeal from the PCRA Order Entered June 19, 2017
In the Court of Common Pleas of Jefferson County
Criminal Division at No: CP-33-CR-0000386-2010

BEFORE: BOWES, PANELLA, and STABILE, JJ.

MEMORANDUM BY STABILE, J.: FILED MARCH 28, 2018

Appellant, Steven Patrick Rebert, appeals from the June 19, 2017 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

Pursuant to his January 30, 2012 judgment of sentence, Appellant is serving consecutive life sentences for the murders of James and Victoria Shugar. This Court affirmed the judgment of sentence and our Supreme Court denied allowance of appeal on November 12, 2014. Appellant filed this timely first PCRA petition on November 16, 2015. Amended, counseled petitions were filed on February 24, 2017, and May 5, 2017. The PCRA court conducted a hearing on May 12, 2017. The court entered the order on appeal on June

18, 2017. This timely appeal followed. Appellant raises two assertions of error:

> 1. Did the trial court err in failing to find that [Appellant] was denied the effective assistance of counsel, and that he was thereby prejudiced and entitled to a new trial, when his trial counsel failed to discover and utilize as impeachment evidence at trial Commonwealth's witness Mr. Joel Eagleson's 2004 felony robbery/attempt crimen falsi conviction out of Monroe County, New York, docketed at No. 2004-3012, when Mr. Joel Eagleson was a key witness for the prosecution and his testimony at trial linked [Appellant] to having had committed the murders of the two (husband/wife) victims?
>
> 2. Did the trial court err in failing to find that [Appellant] was denied the effective assistance of counsel, and that he was thereby prejudiced, when [Appellant's] trial counsel failed to assure his presence at the October 26, 2011, pre-trial 'In Chambers' hearing held on [Appellant's] motion in limine (filed with the lower court on August 31 ,2011?

Appellant's Brief at 5.

We must determine whether the record supports the PCRA court's findings and whether the court committed any legal error in rendering its decision. Commonwealth v. Phillips, 31 A.3d 317, 319 (Pa. Super. 2011), appeal denied, 42 A.3d 1059 (Pa. 2012). Appellant alleges that trial counsel was ineffective in several respects. To obtain relief on a claim of ineffective assistance of counsel, a PCRA petitioner must establish (1) that the underlying issue is of arguable merit; (2) that counsel had no reasonable strategic basis in support of the act or omission; and (3) that counsel's error prejudiced the petitioner. Commonwealth v. Johnson, 139 A.3d 1257, 1272 (Pa. 2016).

- 2 -

> To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must advance sufficient evidence to overcome this presumption.

Id. (internal citations and quotation marks omitted). Failure to impeach a key witness without a reasonable strategic basis for doing so can be considered ineffective assistance of counsel. Commonwealth v. Treiber, 121 A.3d 435, 485 (Pa. 2015). On the other hand, in Commonwealth v. Solano, 129 A.3d 1156, 1175 (Pa. 2015), our Supreme Court found no ineffective assistance in failing to introduce a prior crimen falsi conviction where the jury was aware of the witness' criminal backgrounds and other evidence supported the defendant's guilt.

Eagleson, Appellant's cellmate in prison in New York, testified that Appellant confessed the Shugars' murders to him. Appellant's trial counsel impeached Eagleson with the fact that Eagleson received favorable treatment in New York in exchange for information Eagelson provided about the Shugars' murders. Appellant alleges trial counsel was ineffective for failing to discover Eagleson's prior crimin falsi conviction, a 2004 conviction in Monroe County, New York, for attempted robbery. Appellant argues that counsel's error was prejudicial because Eagleson's testimony was the only direct evidence, other

than drops of the victims' blood discovered on Appellant's boots, implicating Appellant as the perpetrator.

We will confine our analysis to the prejudice prong, as the parties do not dispute that Eagleson's prior conviction was admissible under Pa.R.E. 609 and trial counsel offered no strategic basis for failing to introduce it. Counsel simply failed to discover the conviction. The pertinent facts, which are not in dispute, are as follows. On April 12, 2010, James and Victoria Shugar, were found dead in their home on Coal Tipple Road near Brockway, Pennsylvania. The murders took place on April 10 or 11, 2010. The Shugars had been the owners of a flower shop in Brockway. Shortly prior to the victims' murders, Appellant had a job laying fiber optic cable on Coal Tipple Road. In addition, Appellant was in a relationship with Michelle Bright, an employee at the victims' flower shop, prior to the murders. Appellant visited Bright at the flower shop on several occasions, but his relationship with Bright ended at some point prior to the murders. The Commonwealth introduced surveillance footage from a Sheetz store in Brockway which showed Appellant at the store on April 10, 2010, in contradiction to his statements that he was not in Brockway when the murders occurred.

Police executed search warrants on Appellant's home, home computer, and car in April and May, 2010. In Appellant's home, they discovered a red seal 1953 two-dollar bill, gold Sacagawea dollars and Morgan silver dollars. The victims commonly provided similar coinage and paper currency to their

children as gifts. The victims kept a large amount of such currency in their home. Crumpled envelopes that would have contained some of the money were found in the victims' home after the murders. A search of Appellant's computer revealed that, in the early morning hours of April 11, 2010, Appellant began running Google searches related to the prices of old paper currency and coinage. No similar searches occurred prior to that time. In the trunk of Appellant's car police discovered a pair of work boots with blood on them. Forensic testing revealed that the blood belonged to victim James Shugar. Eagleson testified that Appellant told him he murdered the victims because he knew they had a stash of old money in their home.

Given the foregoing, we disagree with Appellant's assessment of the significance of additional crimen falsi impeachment evidence. Defense counsel introduced the fact that Eagleson received favorable treatment in New York for his testimony against Appellant in Pennsylvania. The jury was therefore presented with a basis for questioning Eagleson's credibility based on his criminal background, even without evidence of the 2004 conviction. We conclude that Treiber is inapposite because counsel did not fail to impeach Eagleson.

Furthermore, we disagree with Appellant's assessment of the strength of the evidence against him. Surveillance footage placed Appellant in Brockway when the murders occurred, despite his statements to the contrary. Police found in Appellant's home coinage and paper currency of exactly the

type the victims were known to collect and give as gifts. Google search related to the currency began to occur on Appellant's computer shortly after the murders were believed to have occurred. In summary, the Commonwealth's case included much more than Eagleson's testimony and the (highly incriminating) blood stain on Appellant's boots. The record does not support Appellant's argument that Eagleson's testimony was the only "solid link" other than the bloody boots linking Appellant to the murders. Appellant's Brief at 18. Rather, the Commonwealth produced a body of circumstantial evidence powerfully demonstrating Appellant's guilt.

In the foregoing respects, we find Solano instructive:

> [W]e agree with the PCRA court that Solano is not entitled to relief on this claim. As the Commonwealth notes, counsel attempted to impeach these witnesses by other means on cross-examination, and the Commonwealth had already brought to the jury's attention the fact that Carrasquillo was incarcerated and had gun and drug charges pending in federal court[.] Jose Aquino had an open charge of receiving stolen property at the time of the shooting, to which he pled guilty and served a sentence, and Rosario pled guilty and served a sentence for illegally possessing a gun at the time of the shooting[.] Although Santiago's prior crimen falsi conviction and probation status were not made known to the jury, we cannot say the absence of this information denied Solano a fair trial, as Santiago was merely one of several identification witnesses; thus, Solano's guilt did not depend solely on this testimony. In light of the overall testimony of these witnesses, counsel did not act unreasonably by not impeaching them with crimen falsi convictions or introducing ballistics evidence to rebut Rosario's testimony.

Solano, 129 A.3d at 1175 (record citations omitted). Here, as in Solano, the jury was aware of criminal charges against the witness in question and a substantial body of evidence other than the witness' testimony support the

guilty verdict. We conclude that Appellant has failed to establish any probability that the outcome of trial would have been different had counsel introduced Eagleson's prior crimen falsi conviction. Appellant's first argument lacks merit.

Next, Appellant claims trial counsel was ineffective for failing to procure Appellant's presence during an in-chambers discussion of Appellant's pretrial motion. On two occasions, police visited Appellant at his home and asked him to accompany them to the police station for an interview. On both occasions, Appellant spoke to police but he declined to go to the police station. Among the issues Appellant raised in his pre-trial motion was a motion in limine to exclude evidence of these two conversations and evidence of his refusal to go to the police station. Appellant was present in the courtroom for the hearing on his pretrial motions, but the trial court heard argument from counsel in chambers.[1]

_____

[1] Appellant's case was the subject of significant media attention. The PCRA court explained the in chambers proceeding in its opinion:

> [Appellant] filed motions in limine on August 31, 2011, at which point a second omnibus hearing was already scheduled to address evidence the police gathered from various sources in the state of New York. Much of the evidence was inculpatory and bore the very real potential of polluting the jury pool if it became public knowledge. For that reason, the court decided to bring counsel and Trooper David Ray into chambers for a pre-hearing conference to flesh out the issues and reach a stipulation of facts so that members of the press waiting in the small courtroom would

In chambers, the prosecutor represented that Appellant, during his conversations with police at his home, never asked for an attorney or refused to talk. Appellant claims that he would have contradicted the prosecutor had he been present in chambers. He claims he told police he wanted to speak with an attorney and that he demanded that the police officers obtain a search warrant before coming into his home. The trial court denied Appellant's motion in limine.

Criminal Rule 602(A) provides that "[t]he defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." Pa.R.Crim.P. 602(A). Appellant notes that, when the defendant is charged with a capital offense, the right is not waivable. He cites Commonwealth v. Ford, 650 A.2d 433, 440 (Pa. 1994), cert. denied, 540 U.S. 1114 (1995), wherein the Court held that the trial court did not err in refusing to allow defendant to be absent from the courtroom during trial (due to his menacing appearance) because the defendant was charged with capital offenses. As the PCRA court notes, however, Ford by its terms applies to the

---

not become privy to potentially prejudicial information. As events unfolded, counsel were able to stipulate to all the relevant facts, thereby eliminating the need for a public hearing. [Appellant] was not present to witness or offer his assessment of those stipulations.

PCRA Court Opinion, 6/20/17, at 2-3.

trial stage. Ford did not address a pretrial, in chambers legal argument, and Appellant does not develop any argument in support of such a broad reading of Ford.

We observe that the comment to rule 602 explains that the "defendant's right to be present in the courtroom is not absolute." Pa.R.Crim.P. 602, comment. While the comment is not binding law, it cites binding precedent from our Supreme Court. In Commonwealth v. Boyle, 447 A.2d 250, 253 n.7 (Pa. 1982), the Supreme Court held that a defendant's presence in chambers and at sidebar is not necessary where the defendant is represented by counsel. The Court wrote that "[defendant] contends that the court erred in refusing to allow him to be present at in-chambers and sidebar conferences. [Defendant's] counsel attended the sidebar conferences and he was not limited in the right to confer with [defendant] prior to, during and after these discussions." Id. In Boyle, as in the instant matter, the defendant was charged with multiple counts of first-degree murder. Id. at 252. The comment also cites Commonwealth v. Hunsberger, 58 A.3d 32, 39 (Pa. 2012), in which the Court found no error where counsel examined a prospective juror at sidebar out of the defendant's hearing. "[T]he defendant's consultation with his or her counsel regarding these proceedings may certainly serve as an adequate basis upon which to conclude that the defendant's right to be present during jury impanelment [sic] has been respected." Id. at 40.

Appellant relies on Commonwealth v. McLaurin, 437 A.2d 440 (Pa. Super. 1981), in which this Court held that counsel was ineffective for permitting a suppression hearing to take place when the defendant was not present. We find McLaurin distinguishable in several respects. In McLaurin, the defendant was absent during a courtroom proceeding, as opposed to a sidebar or in chambers meeting, in which the Commonwealth elicited testimony. Id. at 441-42. Counsel did not inform the defendant of the hearing, nor did counsel ask the defendant if he wished to waive his right to be present. Id. In addition, we observe that McLaurin predates our Supreme Court's opinions in Boyle and Hunsberger.

Appellant also cites Commonwealth v. Molina, 33 A.3d 51 (Pa. Super. 2011) (en banc), affirmed, 104 A.3d 430 (Pa. 2014) (plurality), in which a trooper testified that a defendant declined to engage in discussions with him. We held that the Commonwealth could not use a defendant's pre-arrest, pre-Miranda[2] silence as substantive evidence of guilt. Id. at 53. Appellant claims Molina supports his argument that, had he been present in chambers, he could have established that he invoked his Fifth Amendment and, in turn, that the Commonwealth produced evidence of his pre-arrest silence as substantive evidence of his guilt.

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

- 10 -

We conclude that neither the law nor the record supports Appellant's argument. As noted above, our Supreme Court has held that Rule 602 is not implicated where a defendant's counsel participates in sidebars or chambers discussions outside of the defendant's presence. In Boyle, as in the instant matter, there was nothing to suggest that Appellant was unable to consult with counsel both before and after the in chambers proceeding. McLaurin is inapposite because Appellant was not excluded from the entire suppression hearing, as was the defendant in that case.

Furthermore, Appellant's current argument is based on information he never shared with his attorneys. At the hearing on Appellant's PCRA petition, both of his trial attorneys stated that Appellant never told them he asked for an attorney during his pre-arrest conversations with police. N.T. Hearing, 5/12/17, at 78-79, 124. Similarly, Appellant never told them that he demanded that police obtain a warrant before returning to his home. Id. The PCRA court found this testimony credible. Thus, in denying Appellant's pre-trial motion in limine, the trial court simply admitted evidence of statements Appellant voluntarily provided to the police when no charges were pending against him and when he was not in custody. This case is therefore distinct from Molina in that there is no record support for Appellant's argument that the Commonwealth improperly introduced evidence of his pre-arrest silence.

In summary, Appellant has not established that his absence from an in chambers discussion implicated Rule 602, nor has he established a factual

basis in support of his argument that, had he been present, he would have prevailed on his motions in limine. See Commonwealth v. Williams, 9 A.3d 613, 618-19 (Pa. 2010) (holding that a violation of Rule 602 does not result in presumed prejudice). His assertion of ineffective assistance of counsel fails for lack of arguable merit.

For all of the foregoing reasons, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/28/2018