J-A22033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JERRY REEVES | : | |
| | : | |
| Appellant | : | No. 1421 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 21, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0003869-2009

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 20, 2022**

Appellant, Jerry Reeves, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial convictions for second-degree murder, robbery, and firearms not to be carried without a license.[1]  We affirm.

In its opinion, the trial court sets forth the relevant facts of this case as follows:

> Trooper Curtis Salak…was on patrol on the night of May 25, 2006, at around 1:15 a.m., when he observed a white male trying to get his attention in front of City Gas and Diesel.  The white male, Michael Roberts…, had stopped by City Gas and Diesel to get a pack of cigarettes and some cash from the ATM.  Roberts pulled into the parking lot, got out, walked in the door, went to the ATM, withdrew

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(ii), and 6106(a)(i), respectively.

funds, and then walked back to the counter to get a pack [of] cigarettes. When he got to the counter, he observed a gentleman, Hitender Thakur, laying on the floor with a wound in his chest, bleeding profusely. Roberts then ran outside to call 911. He ended the call when he saw a police officer, Trooper [Salak], driving down the road. He flagged down the police officer and brought him to the scene.

Trooper Salak entered the store and observed a male laying on his back behind the counter. He attempted to aid the victim,…but he was unsuccessful. Other than Roberts, Trooper Salak observed another male, Sanjay Thakur…at the store. [Sanjay] Thakur, a friend and roommate of Hitender Thakur, was returning to City Gas and Diesel to return the victim's borrowed cell phone. When he arrived at the convenience store, he observed Roberts running around outside of the store while on the phone with police. Roberts told [Sanjay] Thakur about the victim and [Sanjay] Thakur then ran inside of the store.

Investigator Brandon Kunkel arrived on scene at around 2:20 a.m. After receiving a briefing from Officer Kimmick, he began to take photographs of the scene. Investigator Kunkel watched the store's surveillance video and used that to process the scene for fingerprints. Most of the areas were high traffic areas for the presence of fingerprints. A total of seven print cards were collected from the scene. No DNA evidence was collected from the scene. All evidence was forwarded to the Pennsylvania State Police laboratory.

Detective Christopher Krokos arrived on scene at around 2:30 a.m. Investigator Kunkel walked Detective Krokos through the crime scene and gave him preliminary information. Detective Krokos observed Hitender Thakur laying on the floor behind the counter.

Dr. Wayne Ross performed the autopsy on Hitender Thakur on May 25, 2006. Dr. Ross determined that the gunshot went through his chest, his heart, his aorta, and travelled into his belly region. The cause of death is a gunshot wound to the chest. Dr. Ross further testified that [Phencyclidine,] PCP[,] can affect memory and cause

amnesia. Dr. Jonathan Arden also testified regarding the effects of PCP. Dr. Arden reviewed the report from Dr. Ross and testified that he is not aware that memory loss is one of the recognized effects or complications of the use of PCP. However, he did testify that PCP causes mind-altering effects.

Investigator Karen Lyda…attended the autopsy of Hitender Thakur. Investigator Lyda collected the bullet from the autopsy and submitted it to Pennsylvania State Police. Investigator Lyda helped the lead investigator of this case with the processing of some latent fingerprints. Any prints that had sufficient details were run through [the Automated Fingerprint Identification System,] AFIS. One palm print came back to Tavon Shaw.

[Sergeant] David Krumbine, qualified as a ballistics expert during trial, received the bullet submitted in this case. Sergeant Krumbine determined that it was a discharged and mutilated metal jacketed bullet of the .25 caliber class that was discharged from a firearm having rifling with eight lands and grooves and a right twist.

On May 28, 2006, being interviewed for an unrelated incident, Appellant provided information about Hitender Thakur's murder to Officer Fenton in hopes that he could be released for a family holiday cookout to avoid charges. Detective Krokos went to Appellant's home and took him back to Harrisburg Police Department for an interview. Appellant told Detective Krokos that he was sitting across the street from City Gas and Diesel on a porch. He saw a male who he knew as Jermaine Taylor exit a vehicle, go into the store, rob the store, and then get into the vehicle again to drive away. He then told Detective Krokos that he lied, and Jermaine Taylor did not exist. He stated that he lied because he wanted to be present at his family's cookout for the holiday. Appellant eventually stated to Detective Krokos that he did not have information about the murder. Detective Krokos considered Appellant part of the case, but not a suspect until 2009.

Nishant Rana, roommate and childhood friend of Hitender Thakur, was interviewed. Rana also worked at City Gas and Diesel with Hitender Thakur. Rana's usual shift was

midnight to 6 a.m. and the victim's usual shift was 7 p.m. to midnight. Hitender Thakur switched shifts with Rana because Hitender Thakur was taking summer classes. Rana knew Appellant because he came into the store around three to four times a week for approximately six or seven months. Appellant would sweep for Rana in exchange for free cigars. Rana began working at the store in the daytime after the victim's murder. He never saw Appellant in the store again after the murder.

After reviewing the surveillance video, Detective Krokos was able to identify two males as Derrick Small and Xavier Henry. Both Derrick Small and Xavier Henry were interviewed. Through the interview with Derrick Small, a suspect profile was created indicating that the suspect was shorter in stature and weight, male, and light skinned, either Hispanic or black. This suspect profile was used to rule out subsequent suspects and leads.

On May 25, 2006, Billy Grier…was interviewed and determined to have been near the store, but he was ruled out because he did not match the description. Grier was about five feet seven inches and weighed two hundred and twenty-five pounds. Grier stated that he saw someone go into the store who he thought committed the crime. This person was identified by Grier as "G-Dawg," but he was unable to identify this person in the provided photographs. Grier then went back to his original story that he did not know anything about the incident.

Detective Krokos then learned that Kai Anderson and Michael Holmes escaped from the Work Release Center the night of the incident. Kai Anderson was interviewed on May 31, 2006[,] and he denied any involvement in the incident. Michael Holmes is six feet three inches tall and weighed two hundred pounds at the time he was interviewed. Isaiah Richmond was interviewed in connection with the incident and he also denied any involvement. Isaiah Richmond is five feet ten inches tall, weighed one hundred and fifty pounds, and has medium to dark skin tone.

On July 29, 2009, Detective Krokos saw that Appellant was in custody for an unrelated incident. Appellant agreed to

speak with Detective Krokos about Hitender Thakur's murder. Detective Krokos asked Detective Donald Heffner to help him interview Appellant. Detective Heffner then asked Detective Hector Baez to help in the interview as well. Detective Heffner verbally **Mirandized**[2] Appellant before taking him upstairs to his office. Appellant told the detectives that he was across the street at the time of the incident and gave them three names. Appellant stated that he was across the street when he saw his cousins, Ferred and Chase, and a third black male, Joseph Baldwin, at the store. He stated that Chase and Joseph Baldwin went into the store. Appellant heard a gunshot and then saw Chase and Joseph Baldwin get into a vehicle. Appellant then stated that the murder was an accident and that it was not intentional. The detectives told Appellant that his story did not make sense. Appellant then changed his story to say that he was in front of the store with the three men instead of on his porch. Appellant stated that Ferred went into the store and Appellant took off running when he heard a gunshot. Detectives again told Appellant that his story did not make sense and that Appellant needed to tell the truth. Appellant began to get emotional and stated that it was an accident and that he just needed money. He told the detectives that he burned his clothing at the Reservoir Park after the incident. He also stated that he got the gun in Baltimore. Appellant stated that he was under the influence of PCP at the time of the robbery and murder.

(Trial Court Opinion, 1/4/21, at 2-7) (internal record citations and footnotes omitted).

In 2010, prior to Appellant's first trial, counsel moved to suppress Appellant's confession, claiming the confession was given without a knowing and voluntary waiver of Appellant's constitutional rights. The trial court conducted a suppression hearing where it heard testimony from Detectives

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Heffner and Krokos, and subsequently denied the motion.

Thereafter, the court conducted a three-day jury trial. As part of its case-in-chief, the Commonwealth introduced Appellant's confession. Appellant testified in his defense. On June 23, 2010, the jury found Appellant guilty of second-degree murder, robbery, and firearms not to be carried without a license. The court sentenced Appellant to life imprisonment for murder and imposed a concurrent five to ten years' imprisonment on the robbery count, and a concurrent one to two years' imprisonment on the firearms count. On July 1, 2011, this Court affirmed the judgment of sentence. *See Commonwealth v. Reeves*, 32 A.3d 256 (Pa.Super. 2011) (unpublished memorandum). Appellant did not seek further direct review.

On July 30, 2012, Appellant filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546, arguing that trial counsel was ineffective for failing to present evidence of another suspect. The PCRA court issued notice of intent to dismiss the PCRA petition per Pa.R.Crim.P. 907 on October 10, 2012. Appellant filed objections on October 29, 2012. On November 26, 2012, the PCRA court denied relief, concluding that trial counsel's failure to present evidence of an alternate suspect did not prejudice Appellant based on Appellant's confession and the store surveillance video which corroborated the confession. On November 7, 2013, this Court affirmed the denial of PCRA relief, and our Supreme Court

denied allowance of appeal on March 25, 2014. *See Commonwealth v. Reeves*, 91 A.3d 1276 (Pa.Super. 2013) (unpublished memorandum), *appeal denied*, 624 Pa. 696, 87 A.3d 815 (2014).

On July 31, 2014, Appellant filed a petition for writ of *habeas corpus*, asserting, *inter alia*, ineffective assistance of counsel for failing to present evidence that two other suspects had committed the robbery. The Magistrate Judge to whom the petition was referred denied an evidentiary hearing and recommended that the District Court dismiss Appellant's petition as untimely because it was filed four months late. The United States District Court for the Middle District of Pennsylvania adopted the Magistrate Judge's report and recommendation.

By opinion entered July 23, 2018 (as amended July 25, 2018), the Third Circuit Court of Appeals vacated the order dismissing Appellant's *habeas corpus* petition as untimely. In doing so, the Court held that, as a matter of first impression, when a state prisoner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder exculpatory evidence that demonstrates his actual innocence, such evidence constitutes "new" evidence for purposes of the actual innocence miscarriage of justice gateway to excusing procedural default of the *habeas* claim. Thus, the Court characterized the proffered alternate suspect evidence as "new," and remanded for the District Court to consider whether such evidence was reliable, and whether Appellant could show that

it was more likely than not that no reasonable juror would have convicted him based on that evidence. If Appellant is able to make such a showing upon remand, then the Third Circuit directed the District Court to review Appellant's ineffective assistance of counsel claim on the merits. **See Reeves v. Fayette SCI**, 897 F.3d 154 (3d Cir. 2018), *cert. denied*, ____ U.S. ___, 139 S.Ct. 2713, 204 L.Ed.2d 1123 (2019).

Upon remand, the District Court granted Appellant's petition for *habeas corpus* relief, and ordered the Commonwealth to release or retry Appellant within 120 days. **See Reeves v. Coleman**, No. 3:14-cv-01500-SES, Doc. No. 78 (M.D.Pa. filed Nov. 13, 2019). The Commonwealth subsequently gave its notice of intent to retry Appellant.

On August 20, 2020, Appellant filed a pre-trial motion to suppress his confession. On August 27, 2020, Appellant filed notice of his intent to introduce expert testimony from Daniel A. Martell, Ph.D., and Jacqueline Evans, Ph.D. Following a hearing on September 22, 2020, the trial court denied Appellant's motion to suppress the confession, relying on the law of the case doctrine. The court also precluded the testimony of Appellant's two proffered expert witnesses. On that same day, Appellant filed a motion *in limine* to preclude expert testimony from Dr. Wayne Ross regarding the effects of PCP, which the court denied on September 30, 2020.

The court commenced a retrial of Appellant on October 19, 2020. The Commonwealth introduced Appellant's confession during its presentation of

evidence. The Commonwealth also read into the record Appellant's testimony from his first trial. (*See* N.T. Trial, 10/20/20, at 435-472). At the conclusion of trial, on October 21, 2020, the jury convicted Appellant of second-degree murder, robbery, and firearms not to be carried without a license. The court sentenced Appellant that same day to life without parole for the murder conviction and imposed concurrent sentences of five to ten years' incarceration for robbery and one to two years' incarceration for firearms not to be carried without a license.

Appellant timely filed a notice of appeal on November 5, 2020. On November 10, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied.

Appellant raises the following issues for our review:

> Whether the trial court erred in denying [Appellant]'s motion to suppress his July 29, 2009, statement because the law-of-the-case doctrine should not apply in a retrial, particularly where the legal issues and record are different than those in the previous suppression proceeding?

> Whether the trial court erred in holding that testimony from [Appellant]'s expert witnesses on the phenomenon of false confessions and on [Appellant]'s mental-health history and psychological assessments of [Appellant] was inadmissible at both the suppression and trial stages?

> Whether the trial court erred in permitting [Appellant]'s testimony from his previous trial, where he was represented by constitutionally-ineffective counsel, to be read to the jury?

> Whether the trial court erred in sustaining the

Commonwealth's hearsay objections to testimony related to alternative suspects and the course of the police investigation, particularly where the federal courts held prior counsel was ineffective for failing to present this precise evidence?

(Appellant's Brief at 4-5).

In his first issue, Appellant argues that the court erred in applying the law of the case doctrine to deny his 2020 motion to suppress his July 29, 2009 statement because both the law and facts changed since the filing of his initial suppression motion. Appellant asserts that the bases for his 2020 motion seeking to suppress his confession were that the confession was given involuntarily and because admission of the confession was more prejudicial than probative under Pennsylvania Rule of Evidence 403.[3] (**Id.** at 41-42). Appellant contends that under Rule 403, the trial court should have considered "whether [his] confession was so unreliable that the prejudicial effect of admitting it would outweigh any probative value." (**Id.** at 41).

Further, Appellant maintains that application of the law of the case doctrine was inappropriate because there was a substantial change in the evidence which would be introduced at a new suppression hearing. Specifically, Appellant claims that he would now testify on his own behalf at

---

[3] We note that Appellant does not argue the merits of whether his suppression motion should have been granted on the grounds alleged concerning involuntariness and under Rule 403. Rather, Appellant's sole complaint in this issue is whether the court misapplied the law of the case doctrine in deciding to deny Appellant's 2020 suppression motion.

the suppression hearing. In doing so, Appellant insists that he would provide a substantially different factual record than that considered in 2010 because the trial court could hear Appellant's personal explanation of the circumstances surrounding his interrogation as well as his physical and mental health. (*Id.* at 43). In addition, Appellant maintains that he would introduce the testimony of Dr. Martell regarding Appellant's psychological assessment and how Appellant was vulnerable to making a false confession, and the testimony of Dr. Evans regarding the phenomenon of false confessions in general. Appellant concludes that this Court should vacate his convictions and judgment of sentence and remand this matter for an entirely new suppression hearing. We disagree.

"Whether the [l]aw of the [c]ase [d]octrine precludes review in a given situation is a pure question of law. Therefore, our standard of review is *de novo*." **Commonwealth v. Lancit**, 139 A.3d 204, 206 (Pa.Super. 2016), *appeal denied*, 640 Pa. 543, 164 A.3d 465 (2016) (citations omitted).

The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Commonwealth v. Starr**, 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995). This Court has explained the law of the case doctrine as follows:

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for

further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferrer trial court.

*Commonwealth v. Viglione*, 842 A.2d 454, 461-62 (Pa.Super. 2004) (citation omitted).

The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy…but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa.Super. 2005), *appeal dismissed as improvidently granted*, 593 Pa. 657, 933 A.2d 650 (2007).

Departure from the law of the case doctrine is allowed in exceptional circumstances such as: (1) where there has been an intervening change in the controlling law, (2) a substantial change in the facts or evidence giving rise to the dispute in the matter, or (3) where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Viglione, supra*.

Pennsylvania Rule of Evidence 403 limits the admission of relevant evidence, stating: "The court may exclude relevant evidence if its probative

value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Instantly, the court explained that it denied Appellant's 2020 motion to suppress based on the law of the case doctrine:

> In this case, the issues contained in Appellant's suppression motion were previously litigated before the Honorable Judge John Cherry on June 21, 2010. We concluded that these issues were barred from being litigated again for Appellant's 2020 trial under the law of the case doctrine. The controlling law has not changed in this matter nor have the facts or evidence giving rise to the dispute. We find no reason to disturb the decision made by Judge Cherry in the suppression hearing held before Appellant's first trial. Additionally, the Superior Court of Pennsylvania found that Appellant's confession was voluntary on appeal and, therefore, found Judge Cherry's decision to be supported by the relevant facts and law.

(Trial Court Opinion at 9) (internal footnote and citation omitted).

Our review of the record confirms that Appellant challenged the voluntariness of his confession in the 2010 suppression motion and attacked the denial of that motion on direct appeal. This Court affirmed on direct appeal, concluding that Appellant's confession was not involuntary. *See Commonwealth v. Reeves*, 32 A.3d 256 (Pa.Super. 2011) (unpublished memorandum) (affirming denial of Appellant's suppression motion where Appellant appeared coherent, alert, and physically sound during interview; no threats or promises were made to induce Appellant's confession; police gave Appellant *Miranda* warnings at two points during interview, during

- 13 -

which Appellant voluntarily waived his rights and confessed; although interview was custodial in nature, it was not so manipulative or coercive as to deprive Appellant of his ability to make free and unconstrained choice). We agree with the trial court that the law of the case doctrine applies under these circumstances. **See Viglione, supra**.

Additionally, we agree with the trial court that Appellant has not demonstrated that he is entitled to an exception to the law of the case doctrine based on Appellant's proffered "new" evidence. The fact that Appellant now wants to testify at a suppression hearing is nothing "new." Appellant knew all the facts concerning his confession at the time of his 2010 suppression hearing and chose at the time not to testify concerning the voluntariness of his confession.[4] Appellant is not entitled to the proverbial "second bite of the apple" by construing his intent to testify at a second hearing as a change in the facts. **See id.**

Likewise, Appellant's proffered introduction of testimony from Drs. Evans and Martell does not afford him relief where the trial court decided that the testimony of these experts would have been inadmissible at both a suppression hearing and at trial. Specifically, the court explained that "[t]he proposed testimony would have included discussion on specific investigatory

---

[4] Although the Commonwealth bears the burden of producing evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights, the defendant may also testify at a suppression hearing. **See** Pa.R.Crim.P. 581(H).

techniques" and was therefore inadmissible "because the ultimate issue is one of credibility and is best left to the jury." (Trial Court Opinion at 10) (relying on **Commonwealth v. Alicia**, 625 Pa. 429, 92 A.3d 753 (2014), holding that expert testimony on phenomenon of false confessions would impermissibly invade jury's exclusive role as arbiter of credibility).

We agree with the trial court's rationale. Although **Alicia** was rendered in the context of expert testimony concerning false confessions at trial, the Court did not specifically limit its holding to trials. Additionally, Appellant has not introduced any authority to support the proposition that **Alicia** should not apply to suppression hearings. Consequently, Appellant has failed to demonstrate an exception to applying the law of the case doctrine based on his proffered expert testimony. **See Viglione, supra**.

Finally, Appellant's reliance on Rule 403 is also unavailing. In Appellant's 2020 suppression motion he argued that his confession should be suppressed under Rule 403 because the "circumstances attendant to his interrogation render the confession unreliable." (Omnibus Pretrial Motion, 8/3/20, at 37). The circumstances detailed include an alleged failure to read Appellant his **Miranda** rights, the duration of his detention and interrogation, and his physical and mental state. (**Id.** at 37-38). This argument is essentially no different from Appellant's claim that his confession should be suppressed as involuntary. We reiterate that this Court has already upheld the voluntariness of Appellant's confession on direct

appeal.

In any event, Appellant's reliance on Rule 403 is misplaced. Rule 403 is a rule of evidence pertaining to whether certain evidence may come in at trial—the Rule is generally not appliable at the suppression stage, which focuses on whether the Commonwealth violated a defendant's constitutional rights. Whether evidence should be suppressed because it was obtained in violation of a defendant's constitutional rights is a different question than whether evidence should come in at trial based on its potential for prejudice. *See generally Commonwealth v. Hicks*, 625 Pa. 90, 91 A.3d 47 (2014) (explaining that Rule 403 is "trial-oriented rule"; balancing inquiry under Rule 403 is fact and context specific and normally dependent on evidence presented at trial; as such, Rule 403 rulings are generally deferred to trial). Thus, we disagree with Appellant's contention that the court was obligated to conduct a Rule 403 balancing test at the suppression stage of the proceedings.[5]

Under these circumstances, we conclude that the trial court appropriately applied the law of the case doctrine when it decided not to

---

[5] To the extent Appellant complains that the court should have conducted a Rule 403 balancing test before admitting Appellant's confession at the retrial, we emphasize that "[e]vidence will not be prohibited merely because it is harmful to the defendant." *Commonwealth v. Dillon*, 592 Pa. 351, 366, 925 A.2d 131, 141 (2007). A confession will almost always be harmful to a defendant, but, where a court has concluded that the confession was made voluntarily, we cannot say that the probative value of the confession is outweighed by the danger of unfair prejudice.

conduct a second suppression hearing concerning the voluntariness of Appellant's confession. *See Lancit, supra*. Therefore, Appellant's first issue does not merit relief.

In his second issue, Appellant concedes that our Supreme Court's holding in *Alicia* barred him from presenting Dr. Evans' testimony about the general phenomenon of false confessions at trial. Nevertheless, Appellant argues that the testimony of Dr. Martell should have been admitted because it "does not fall within the scope of the general expert testimony on false confessions prohibited by *Alicia* and is admissible expert testimony under Pennsylvania Rule of Evidence 702." (Appellant's Brief at 53-54). Appellant contends Dr. Martell's testimony was important to show Appellant's mental state at the time he made his confession. Appellant concludes the trial court erred by precluding Dr. Martell's testimony at the retrial, and this Court must grant relief. We disagree.

When reviewing the admission or exclusion of evidence, our standard of review is well established and very narrow:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 634 Pa. 162, 186, 129 A.3d 480, 494

(2015), *cert. denied*, 137 S.Ct. 92, 196 L.Ed.2d 79 (2016) (internal citations and quotation marks omitted). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." ***Commonwealth v. O'Brien***, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

> When a [trial] court comes to a conclusion through the exercise of its discretion, there is a heavy burden [on the appellant] to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power.

***Commonwealth v. Gill***, 651 Pa. 520, 533, 206 A.3d 459, 466 (2019) (citations and quotation marks omitted).

Pennsylvania Rule of Evidence 702 provides:

**Rule 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

"There has been a long-standing policy in this Commonwealth of protecting the jury's prerogative to determine credibility from the undue influence that accompanies expert testimony on the subject of credibility of witnesses." *Commonwealth v. Pugh*, 101 A.3d 820, 822 (Pa.Super. 2014) (*en banc*), *appeal denied*, 632 Pa. 670, 117 A.3d 296 (2015).

In *Alicia*, our Supreme Court held that "expert testimony [regarding false confessions] constitutes an impermissible invasion of the jury's role as the exclusive arbiter of credibility." *Alicia, supra* at 446, 92 A.3d at 764. The Court further stated: "[T]he matter of whether [the defendant's] confession is false is best left to the jury's common sense and life experience, after proper development of relevant issues related to, *inter alia*, the particular circumstances surrounding the elicitation of his confession, using the traditional and time-honored techniques of cross-examination and argument." *Id.* at 447, 92 A.3d at 764.

Instantly, in evaluating Appellant's issue, the court explained:

> In this case, Appellant wished to introduce the testimony of two experts, Dr. Jacqueline Evans and Dr. Dan Martell, regarding false confessions. The proposed testimony would have included discussion on specific investigatory techniques. This [c]ourt determined that, under *Alicia*, this testimony is inadmissible at both a hearing and trial because the ultimate issue is one of credibility and is best left to the jury. Therefore, we find this claim lacks merit.

(Trial Court Opinion at 10).

- 19 -

Under **Alicia**, the trial court correctly determined that testimony regarding false confessions was inadmissible at trial. **See Alicia, supra**; **Pugh, supra**. Specifically, Appellant sought to introduce Dr. Martell's testimony that based on Appellant's psychological vulnerabilities, he would have been more susceptible to making a false confession under interrogative pressure. Thus, we see no reason to disturb the court's preclusion of Dr. Martell's proffered testimony concerning Appellant's mental state, where Dr. Martell's testimony would have improperly opined on Appellant's credibility. **See id. See also Woodard, supra**. Accordingly, Appellant's second issue merits no relief.

In Appellant's third issue, he argues that the court abused its discretion by permitting the Commonwealth to read Appellant's testimony from his first trial to the jury in his retrial. Appellant acknowledges that testimony from a first trial is generally admissible at a retrial even when the defendant does not testify at the second trial. (Appellant's Brief at 56). Nevertheless, Appellant claims that this general rule should not apply where the prior testimony was "impelled by a constitutional defect—here, the ineffective assistance of trial counsel." (**Id.**) Appellant insists that trial counsel's ineffectiveness induced him to testify at the first trial to explain why Appellant made the confession to police, particularly where trial court

had failed to introduce alternative suspects to the jury. (*Id.* at 57).[6] Appellant concludes admission of his testimony at the retrial was improper, and this Court must grant appropriate relief. We disagree.

Our Supreme Court has stated:

> [A] defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be[ ]used against him in a subsequent trial of the same case. The fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible.

*Commonwealth v. Boyle*, 498 Pa. 486, 498, 447 A.2d 250, 256 (1982) (footnote and citations omitted). In *Boyle*, our Supreme Court concluded that "[t]he fact that Boyle exercised his right of silence during the second trial did not insulate him from the consequences of his earlier testimony." *Id.* The Court reasoned that "[i]t has long been recognized that testimony from an earlier trial may be introduced in the prosecution's case against a defendant regardless of whether that defendant takes the stand or not in the second proceeding." *Id.* (citations omitted).

---

[6] Appellant observes that our Supreme Court granted review of a similar issue in *Commonwealth v. Dougherty*, No. 512 EAL 2020, 2021 WL 1097731 (Pa. Mar. 23, 2021) (*per curiam*) (granting allowance of appeal limited to following issue: "Where [petitioner's] testimony at his first trial was induced by the ineffective assistance of counsel, did the trial court commit reversible error by admitting that testimony at his third trial?"). Nevertheless, the Court subsequently dismissed the appeal based on the appellant's death. *See Commonwealth v. Dougherty*, ___ Pa. ___, 263 A.3d 1143 (2021) (*per curiam*).

Instantly, the trial court explained:

> In this case, Appellant voluntarily testified during his first trial. This testimony was read during his retrial. Appellant argued, prior to trial, that it would be prejudicial to introduce the prior testimony when his previous trial counsel was found to be ineffective. We do not find this argument to be persuasive. Appellant's prior trial counsel was deemed ineffective because he failed to investigate an alternate suspect or to argue such at trial. This ineffectiveness has nothing to do with Appellant's decision to testify at his previous trial. Therefore, under the facts and circumstances in this case and taking into consideration the decision in **Boyle**, this [c]ourt concluded that Appellant's prior testimony is admissible. Thus, we find this claim lacks merit.

(Trial Court Opinion at 12-13) (record citation omitted).

We see no reason to disturb the trial court's analysis. Prior to testifying in his first trial, Appellant acknowledged his right to remain silent and indicated his intent to waive that right so he could testify on his own behalf. (N.T. Trial, 6/21-23/10, at 154-157). We are not persuaded by Appellant's argument that this waiver was tainted by the ineffective assistance of counsel. The Third Circuit held that Appellant's initial trial counsel was ineffective for failing to investigate and argue that a third-party alternate suspect was guilty of the crimes charged. We agree with the trial court that Appellant's decision to testify was not caused by counsel's ineffectiveness. As such, the court did not abuse its discretion when it permitted Appellant's prior testimony to be introduced at his retrial. **See Woodard, supra**. **See also Boyle, supra**.

In his fourth issue, Appellant argues that the trial court erred by

consistently sustaining the Commonwealth's objections to the introduction of evidence of alternate suspects and the course of the police investigation. (Appellant's Brief at 58). Appellant asserts that this is "precisely the evidence the federal courts held [Appellant's] first counsel was ineffective for not presenting." (*Id.*) Appellant claims that testimony regarding alternate suspects was not hearsay and should have been allowed to show the course of conduct of the police investigation. (*Id.* at 59). Relying on our Supreme Court's recent decision in ***Commonwealth v. Yale***, 9 MAP 2020, 2021 WL 1681926, at *1 (Pa. filed Apr. 29, 2021), Appellant claims that precluding the introduction of this evidence violated his right to present a complete defense. (Appellant's Brief at 58). We disagree.

It is well-settled that:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. On the other hand, evidence that would constitute inadmissible hearsay if offered…for one purpose may be admitted for another purpose….

***Commonwealth v. Dent***, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004) (citations and internal quotation marks omitted).

> It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay

since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted.

Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

*Id.* at 579 (quoting **Commonwealth v. Palsa**, 521 Pa. 113, 555 A.2d 808 (1989)) (internal citations and emphasis omitted).

Pennsylvania Rule of Evidence 804 concerns exceptions to hearsay when the declarant of the statement is unavailable as a witness. Subsection 804(a) sets forth the criteria for unavailability:

**Rule 804. Exceptions to the Rule Against Hearsay— When the Declarant is Unavailable as a Witness**

**(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:

(1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

(2) refuses to testify about the subject matter despite a court order to do so;

(3) testifies to not remembering the subject matter, except as provided in Rule 803.1(4);

(4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

> (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Pa.R.E. 804(a). Subsection 804(b) lists the specific exceptions—statements that are not excluded by the rule against hearsay if the declarant is unavailable as a witness. *Id.* at 804(b).

In its opinion, the trial court thoroughly explains the relevant statements objected to at trial, and its rationale for sustaining the Commonwealth's objections:

> In this case, the Commonwealth objected several times to the testimony regarding statements made to Detective Krokos by unavailable witnesses. (N.T. Trial, 10/20/20, at 357, 361, 366, 372, 377, 383, 387).
>
> The Commonwealth objected to Detective Krokos testifying to what Billy Grier stated during his interview. (*Id.* at 357). [The trial court] initially sustained the objection. (*Id.*) However, after a sidebar conversation with both attorneys, Detective Krokos was permitted to testify about what Billy Grier told him. (*Id.* at 360). Detective Krokos testified that Billy Grier stated that he saw somebody go into the store that []he thought committed the crime. (*Id.* at 361).
>
> The Commonwealth next objected to further testimony regarding Billy Grier's statements to Detective Krokos. (*Id.*) [The trial court] permitted the testimony but reminded the jury that the testimony is being offered as part of the investigation in the case in general. (*Id.* at

- 25 -

366). Detective Krokos went on to testify about what Billy Grier told him. (*Id.* at 369).

The Commonwealth next objected to testimony by Detective Krokos regarding information from Danielle Igazzitto. (*Id.* at 372). Again, [the trial court] allowed the testimony. (*Id.*)

Next, the Commonwealth objected to the introduction of a statement from Isaiah Richmond to Kai Anderson. (*Id.* at 377). [The trial court] sustained the objection initially. (*Id.*) Detective Krokos was not permitted to testify about what the statement was, but he was permitted to testify to his course of conduct, including how the information or statement affected his investigation. (*Id.* at 378).

Next, the Commonwealth objected to the introduction of a statement allegedly made by Kai Anderson to Kenny Marlow and then to Detective Krokos. (*Id.* at 383-84). [The trial court] sustained the objection as this alleged statement is double hearsay. (*Id.* at 384). Again, Detective Krokos was permitted to testify about how this information affected his course of conduct, but he was not permitted to testify to what the alleged statement was. (*Id.* at 384-85).

Finally, the Commonwealth objected to the introduction of a statement allegedly made by Kai Anderson to Jonathan Johnston and relayed by Jonathan Johnston to detectives in an interview. (*Id.* at 387-88). [The trial court] sustained the objection at sidebar. (*Id.* at 390). Without disclosing the actual statements, Detective Krokos was, again, permitted to testify to how his course of conduct was affected by the information. (*Id.* at 391-92).

[The trial court], at sidebar, then informed the attorneys that it had rescinded its earlier order regarding the Commonwealth's objections to the introduction of statements made by Kai Anderson. (*Id.* at 404). [The trial court] stated that it would make a determination regarding the admissibility after the availability of Kai Anderson was determined. (*Id.*) Through testimony taken outside the presence of the jury by Charles Perkins, it was ultimately determined by [the trial court] that Kai

- 26 -

Anderson was not an unavailable witness and that his statements would not be admissible. (*Id.* at 502).

"A declarant is considered to be unavailable as a witness if the declarant refuses to testify about the subject matter despite a court order to do so." Pa.R.E. 804(a)(2). It is within the trial court's discretion to determine whether there has been a good faith effort to locate a witness. *Commonwealth v. Lebo*, 795 A.2d 987, 990 (Pa.Super. 2002).

In this case, Charles Perkins, a private investigator, was asked by the defense to locate Kai Anderson on October 19, 2020, the evening after the first day of trial. (*Id.* at 490-91, 494). Perkins located the address on the subpoena on October 20, 2020, the second day of trial. (*Id.* at 495). However, Perkins was unable to physically locate Kai Anderson or convince him to be served. (*Id.* at 491, 493). The defense waited until after trial had already begun to ask a private investigator to locate Kai Anderson. Thus, [the trial court] determined that the defense's actions did not constitute a good faith effort to locate Kai Anderson and, as a result, did not allow Kai Anderson's statement to be admitted.

Ultimately, [the trial court] permitted testimony that demonstrated the course of conduct in the investigation by Detective Krokos without allowing specific statements made by witnesses not under oath or available for cross-examination. This decision allowed Detective Krokos to explain his investigation and how any information given to him affected said investigation. Therefore, we find this claim also lacks merit.

(Trial Court Opinion at 13-15) (citation formatting provided).

Our review of the record supports the court's analysis. Contrary to Appellant's assertions, the trial court admitted evidence suggesting the possibility of alternate suspects in this case, to the extent that such evidence was offered to demonstrate the police course of conduct. *See Dent, supra*.

On the other hand, the court properly excluded statements made directly by the alleged alternate suspects where those statements constituted hearsay subject to no hearsay exception. *See id.* We see no abuse of discretion in the court's evidentiary rulings. *See Woodard, supra*.

Regarding Appellant's reliance on *Yale*, our Supreme Court explained that "a defendant has the right to present evidence and that in defense, evidence of a third person's guilt is relevant." *Yale, supra* at \*8. Nevertheless, the *Yale* Court made clear that "[t]hird person guilt evidence is admissible if it is relevant, **not otherwise excludable**, and surmounts the disqualifying considerations of Pa.R.E. 403." *Id.* at \*16 (emphasis added). Here, the evidence that Appellant sought to admit was excludable as hearsay and no exception to the rule against hearsay applied. Therefore, Appellant's citation to *Yale* does not afford him relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2022